EVELYN  D.  BADEN  *v.*  REGINA  B.  CASTLE  ET  AL.

[No. 962, September Term, 1974.]

*Decided September 8, 1975.*

The cause was argued before GILBERT, MOORE and MASON, JJ.

*Jess Joseph Smith,* with whom were *Burrough & Smith* on the brief, for appellant.

*Charles M. Cockerill,* with whom was *L. David Ritter* on the brief, for appellee, Home Bank of Sutton, West Virginia.

*Neil H. Koslowe,* with whom were *Irving Jaffe, Acting Assistant Attorney General, George Beall, United States Attorney,* and *Morton Hollander* on the brief, for appellee, Administrator, United States Small Business Administration.

MOORE, J., delivered the opinion of the Court.

This appeal arises out of a controversy over 8.51 acres of real property in Prince George's County, improved by a dwelling and encumbered by a mortgage to the First National Bank of Southern Maryland and by two deeds of trust securing the Small Business Administration of the United States of America and The Home Bank of Sutton, West Virginia. The adversaries are a mother, age 71 at the time of the proceedings below, and daughter, then 51—both of whom have had substantial experience in the real estate title field as title abstractors. The principal determination reached by the Chancellor (Couch, J.) in an action for specific performance and other relief brought by the mother, Evelyn D. Baden, against the daughter, Regina Baden Castle and other parties,[1] turned upon the court's interpretation of

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, November 21, 1975.

1. The other defendants were the son-in-law, Eugene D. Castle, the Administrator of the Small Business Administration, the Home Bank of Sutton, West Virginia, and the Trustee under deeds of trust secured by the

a deed dated August 31, 1964 between Mrs. Baden, her husband, Ambrose A. Baden, Sr. and their daughter Regina.[2] This was a conveyance of two separate parcels, the first consisting of the 8.51 acres and the second of 34.16 acres.[3] There was a difference between the granting clause and the *habendum* clause. The former granted and conveyed unto the daughter, "her heirs and assigns" the described realty "in fee simple." The *habendum* clause, however, reserved to Mr. and Mrs. Baden a life estate and contained a covenant by Regina to join in a conveyance with her parents should the latter desire to convey it during their lifetime. The printed language of the *habendum* clause was as follows:

> "TO HAVE AND TO HOLD the aforesaid pieces or parcels of ground and premises above described or mentioned, and hereby intended to be conveyed,

---

8.51 acres executed by Mr. and Mrs. Castle dated March 11, 1971 and August 2, 1972. It appears that Regina and Eugene Castle obtained two SBA loans for the reconstruction of a golf course in West Virginia operated by them. The first loan was for $25,000 and the second $30,000. The mortgage to the First National Bank was approximately $30,000 at the time of hearing.

2. Regina was one of six children. In 1964 her married name was Barkman. Later divorced, she married Eugene Castle in 1970. The property conveyed to her was originally part of a 144 acre tract which her parents, Evelyn and Ambrose Baden, had acquired in 1936. Beginning in 1954, the Badens gave shares of the acreage to their children as they came of age, in parcels of approximately twenty acres. Regina had received a conveyance of the 8.51 acre tract on June 30, 1962 but deeded it back to her parents on November 6, 1962, in order that they might obtain a construction loan for building a new home on one acre of the tract. The loan was obtained and the deed of trust executed on June 14, 1963. The record contains a number of deeds, baffling in extent, with respect to this and other parcels of the original 144 acre tract.

3. The record discloses that 30 of the 34.16 acres were conveyed on October 4, 1968 to one Myrtle L. West, "all parties [the Badens and their daughter Regina and her husband] having joined in the conveyance." Mrs. Baden testified that this second parcel was not adjacent to the first but was "way off from everything." The sale to grantee West appears to have been made to assist financially a son, Mark Baden. The remaining 4.16 acres were subsequently conveyed by Mr. and Mrs. Baden and Regina Castle to Cornelius Baden, one of Regina's four brothers. In her testimony below, Regina Castle agreed that her parents had a life estate in the 34.16 acre parcel and admitted that she signed the deed to Myrtle L. West. She explained her refusal to join in the deed for the 8.51 acres by stating: "I was only to convey that property if my mother and father should want it changed in their lifetime."

together with the rights, privileges, appurtenances, and advantages thereto belonging or appertaining unto and to the only proper use, benefit and behoof forever of the said . . ."

Beneath the printed words, the following was typewritten:

"Ambrose A. Baden Sr. and Evelyn D. Baden, his wife reserve a life estate. Also said Regina Baden Barkman covenants and agrees that if at any time during the lifetime of said Ambrose A. Baden Sr. and Evelyn D. Baden should they desire to convey said property she will join in said conveyance."

After the death of her husband in December, 1972, Mrs. Baden entered into a contract of sale for the 8.51 acres with a corporate organization known as Prince George's Homes, Inc., of which her son Mark was president and in which her daughter-in-law, Mark's wife, owned a stock interest. Mrs. Baden was herself a vice president of the corporation but testified that she owned no stock. At the time she entered into the contract with Mark's company, both he and his wife were residing with her in a residence located on one acre of the property.[4] Her daughter, Regina Castle, refused to join in the contract of sale. Prior to the execution of the contract, she and Mr. Castle had encumbered the parcel with the aforementioned two deeds of trust, aggregating in total principal amount the sum of $55,000 (n. 1, *supra*). When Mrs. Baden brought suit below to compel the daughter to join in the sale and for an Order that the 8.51 acres be transferred "free and clear of the Deeds of Trust and that the Deeds of Trust are null and void except as between the parties thereto," the daughter and her husband interposed a general denial and also responded with a cross bill to

4. According to Mrs. Baden, this residence was constructed on the one-acre parcel prior to Mr. Baden's death at a cost in excess of $50,000. Her daughter Regina and her two children had lived with Mrs. Baden at her previous residence located on Rectory Lane in Upper Marlboro from 1961 until 1964 and also resided, until this litigation arose, with the mother at the new house located on Calvert Road. In April, 1973, prior to filing the instant suit against Regina, Mrs. Baden instituted eviction proceedings against her in District Court. On June 12, 1973 Mrs. Baden also obtained a District Court judgment against Regina for $2428.48 and costs.

impress a constructive trust in Regina's favor upon the 8.51 acres.

After two days of hearings in July, 1974 and oral argument on August 30, 1974, the Chancellor filed a memorandum opinion and decree on September 19, 1974. He *granted* the "specific performance" relief requested by Mrs. Baden, ordering the daughter to join in a conveyance to Prince George's Homes, Inc. but *denied* Mrs. Baden's prayer seeking to have the conveyance free and clear of the deeds of trust in favor of the Small Business Administration and the Home Bank of Sutton, West Virginia.[5] The court also *denied* the daughter's prayer that a constructive trust be impressed upon the property. From this decree, Evelyn Baden and Regina Castle noted appeals to this Court. Mrs. Castle, the original appellant, did not file a brief and, on April 1, 1975, her appeal was dismissed. The case is before us, therefore, with Evelyn Baden (originally a cross-appellant) as appellant, and Regina Castle, the trustee under the deeds of trust, the Home Bank of Sutton and the Small Business Administration as appellees.

Mrs. Baden urges that the lower court erred in its application of the doctrine of equitable estoppel and that she should be allowed to transfer the property free and clear of the deeds of trust.

The Home Bank of Sutton, West Virginia contends (a) that the evidence was not legally sufficient to support the decree compelling specific performance, (b) that Mrs. Baden waived any rights she had to convey the property unencumbered by the deeds of trust and (c) that she is estopped from conveying the property unencumbered. The Small Business Administration argues (a) that Mrs. Baden concealed her life estate from the mortgagees and is estopped from avoiding the deeds of trust and (b) that under the doctrine of unclean hands the Chancellor properly denied her prayer that she be permitted to convey the 8.51 acres unencumbered.

---

5. This ruling was based upon principles of equitable estoppel, the Chancellor having found, contrary to Mrs. Baden's testimony, that she was aware of the negotiations going on between the Castles and the Small Business Administration and took an active part in misleading the Bank.

## I

In determining the legal effect of the deed dated August 31, 1964, the court below considered the circumstance that although the granting clause conveyed a fee simple interest, the *habendum* clause reserved a life estate to the grantors, with power to convey during their lifetime. The court's opinion then stated:

"Plaintiff [Mrs. Baden] contends that the granting and habendum clauses may be construed together in order to determine what the parties intended and having done such the deed may be specifically enforced. The Defendant argues that the two clauses are repugnant and that even in the event they can be reconciled by looking at the intentions of the parties, the power to dispose of the property reserved by the life tenants could only be exercised during the joint lifetimes of Ambrose and Evelyn Baden."

The Chancellor recognized that the early decisional law in Maryland, as traced in *Winter v. Gorsuch*, 51 Md. 180 (1879), holds that where there is a conflict or repugnancy between the granting and *habendum* clauses in a deed, the granting clause must control and the *habendum* clause rejected. The court there quoted from *Budd v. Brooke*, 3 Gill 198 (1845): ". . . where the *habendum* is repugnant and contrary to the premises it is void, and the grantee shall take the estate given in the premises." The court in the instant case felt, however, that this rule was "qualified" by later decisions evidencing a "more modern approach." In *Winter*, the granting clause conveyed a fee simple interest and the *habendum* conveyed a life estate. The Court of Appeals held:

"Here then by the premises of this deed an unqualified and absolute interest is given to the daughter, and by the *habendum* that interest is cut down to a life estate with contingent limitations to her children and the heirs of the grantor. The repugnancy and conflict between the two is

apparent and irreconcilable, and, in our opinion, there could not be a plainer case for the application of the doctrine above stated. The limitations in the *habendum clause* must therefore be rejected, and the absolute estate granted by the premises to the daughter must prevail." (p. 186).

In the instant case, two decisions were relied upon by the Chancellor to support his conclusion that the Maryland rule had been changed: *Weinbeck v. Dahms,* 134 Md. 464 (1919) and *Beranek v. Caccimaici,* 157 Md. 144 (1929), which the trial court stated was "factually similar" to the present case. We do not agree. In *Weinbeck* the granting clause itself conveyed an absolute interest but first reserved to the grantor the power to convey, sell, or dispose of the property during the term of her natural life. Moreover, the court observed that "[t]he habendum clause of the deed follows exactly the language of the granting clause." Indeed, the Court of Appeals in *Weinbeck* reaffirmed the rule set down in *Winter v. Gorsuch, supra,* when it stated:

"It is proper to say that there can not be any dispute as to the proposition that where there is a repugnancy between the granting clause of a deed and the habendum, where an estate which has been granted in fee is sought to be cut down to a lesser estate, or limited by conditions, that such attempt will be rejected as void, being in derogation of the absolute estate previously granted." (p. 466).

In *Beranek,* the granting clause conveyed a fee simple estate to a son and daughter as tenants in common, subject, however, to a life estate in the grantor and a reservation of the power "to mortgage, sell or otherwise dispose of or encumber" the devised lot. Again, as in *Weinbeck,* the court noted that "[t]he language of the grant is repeated in the *habendum,* and there is no repugnancy nor conflict anywhere with the operative part of the deed."

We find *Beranek* and *Weinbeck, supra,* to be inapposite. Neither case presents a conflict between the granting and the *habendum* clauses. Even were this not the situation, we

find no support for the Chancellor's conclusion that there has been a departure from the traditional Maryland rule. On the contrary, since the decision in *Winter v. Gorsuch* in 1879, the Court of Appeals has often restated and reaffirmed the rule. *Marden v. Leimbach*, 115 Md. 206 (1911) and cases there cited; *Literski v. Literski*, 166 Md. 641 (1934); *Adams v. Parater*, 206 Md. 224 (1955); *Green, Tr. v. Eldridge*, 230 Md. 441 (1963); *D.C. Transit Systems v. S.R.C.*, 259 Md. 675 (1970); *Lazenby v. F. P. Asher, Jr. & Sons*, 266 Md. 679 (1972). In *Marden v. Leimbach, supra*, the Court stated: [6]

> "It is, of course, elementary that where there is a conflict between the granting and *habendum* clauses, the former · will prevail. A familiar illustration of such a repugnancy is where the granting clause is in fee and the *habendum* is only for life. *Winter v. Gorsuch, supra*. But there is no such conflict unless the *habendum* divests the estate granted and substitutes another." (Citations omitted.) (p. 209).[7]

In 1970, the Court of Appeals quoted the above statement of the rule in *Marden* in the case of *D.C. Transit Systems v. S.R.C., supra*. Again, in the 1972 case of *Lazenby v. F. P. Asher, Jr. & Sons, supra*, Judge Smith quoted "some of the rules for construction of deeds [which] were summed up for the Court by Chief Judge Brune: in *Adams v. Parater, supra*, including the following:

> "If, however, we entertained doubts as to the

---

**6.** In *Marden*, there was no inconsistency between the granting and *habendum* clauses; each conveyed an estate for life.

**7.** *See also* American Law of Property, Vol. III, § 12.47 (1952); Thompson on Real Property, Vol. 7, § 3136 (1962). But *compare* 23 Am.Jur.2d, Deeds, § 203-209 and Annotation, "Conflict Between Granting and Habendum Clauses as to Estate Conveyed," 58 A.L.R.2d 1374 (1958) which states in its introduction: "The cases decided since publication of the annotation in 84 ALR 1054, here supplemented, show a strong and accelerating tendency to embrace what is ordinarily characterized as the 'modern' doctrine, to the effect that the real intention of the parties to a deed, if ascertainable from the instrument as a whole, whether with or without resort to a consideration of the attending circumstances, is to be given effect in regard to the estate conveyed despite conflicts or repugnancies between the granting and habendum clauses."

proper construction of the deed and were forced to rely upon a technical rule of construction, we believe that the rule which, in case of repugnancy, gives effect to the first of two conflicting clauses in a deed, should be followed in this case. [Citing cases.] *The most frequent application of this rule is in cases where the granting clause is held to prevail over the habendum. . . .* The reason for the rule suggested by *Tiffany, Real Property,* 3rd Ed., Sec. 979, seems clearly applicable and pertinent here — that it is 'to prevent the revocation by implication, by a later clause, of an earlier provision made in clear, explicit and unambiguous words, such a revocation being required to be in terms no less clear and explicit than those of the earlier provision.' " *Id.* at 236-37. (Underscoring added.)

Ordinarily, therefore, under the strict Maryland common law rule, the *habendum* clause here would have been disregarded since it reserved a life estate in the grantors notwithstanding the provisions of the granting clause whereby they granted title to the property in fee simple. This *habendum* clause, however, contained a specific independent covenant by the grantee, *who also executed the deed,* whereby she agreed that "if at anytime during the lifetime of said Ambrose A. Baden, Sr. and Evelyn D. Baden should they desire to convey said property she will join in said conveyance."

In March, 1973, the grantee was formally advised by counsel representing the surviving grantor [8] of the latter's desire to convey the property. This letter, dated March 13, 1973, was addressed by Mrs. Baden's counsel to Mrs. Regina B. Castle, Box 3312, Upper Marlboro, Maryland and read as follows:

"Dear Mrs. Castle:

This office has been retained to represent Mrs.

---

8. There is no contention before us, as there was before the Chancellor that Regina Castle's obligation to join in a conveyance subsisted only during the joint lives of the grantors. The Chancellor rejected this contention and, we think, did not err.

Evelyn D. Baden in the sale of her property, parcel #1 containing 8.51 acres as recorded in Liber 3031, Folio 482 in the Land Records of Prince George's County, Maryland.

Mrs. Baden has a purchaser for the noted property and it is her desire to convey said property to the purchaser.

Inasmuch as you have heretofore agreed, by deed recorded in Liber 3031, Folio 482, to join in the conveyance of said property at any time, you are hereby requested to sign a deed conveying the subject property. The deed may be signed in my office at any time."

It is plain from the above evidence that the grantee was informed (1) that the grantor had a purchaser for the property and (2) it was her desire to convey it. The grantee's commitment to execute a conveyance was unconditional. It was also specifically enforceable and the Chancellor properly ordered compliance with its provisions. *Browne v. Browne*, 1 Harr. & J. 430 (1803) (conditional intrafamilial covenant to convey specifically enforced); *see also Cataldo v. Compiano*, 76 N.W.2d 214 (Iowa, 1956) (vendor's conditional option to repurchase specifically enforced upon occurrence of condition). We put aside the contentions made by the appellee, Home Bank of Sutton, West Virginia, that the evidence adduced on behalf of Mrs. Baden was not legally sufficient to support the lower court's decree requiring Mrs. Castle to join in the conveyance. It is true, as appellee argues, that the contract of sale with Prince George's Homes, Inc., although identified, was not received in evidence; and that Mrs. Baden testified that she did not remember the terms of the contract or the settlement date; and that a copy of the deed was not offered in evidence. On the other hand, however, Mrs. Castle herself disclosed on direct examination her knowledge of the existence of the contract and, indeed, testified that she had seen it:

"Q Did you have a conversation with Mr. Burroughs [attorney for Mrs. Baden] regarding the contract on the 8.51 acres?

A  Yes.

Q  And did Mr. Burroughs show you the contract?

A  Yes, he did.

Q  And who was the contract with, if you know?

A  It was with Mark Baden.

Q  And who is Mark Baden?

A  P. G. Homes, Inc.

Q  And who is Mark Baden?

A  Mark Baden is my brother."

Furthermore, Mrs. Baden testified that the contract of sale was with Prince George's Homes, had been prepared by Mark and that she had a copy of it at home. She also told the Chancellor that, since the execution of the agreement, the company (intending purchaser) had been paying all the utility bills and the mortgage installments to First National Bank.

Case authority urged upon us by the appellee bank relating to the requirements for specific performance of a contract for the sale of real estate, *Beck v. Bernstein*, 198 Md. 244 (1951); *Tarses v. Miller Fruit and Produce Co.*, 155 Md. 448 (1928) and *Kalavan v. Hamburger*, 178 Md. 218 (1940) are inapposite. The contract here that was required to be specifically enforced — and properly so — was the covenant of Mrs. Castle to join in a conveyance of the property at any time the grantors desired to do so. This covenant was contained in a deed which, according to the undisputed testimony of Mrs. Baden, was prepared by Mrs. Castle herself — an individual experienced in title and mortgage transactions. (According to her own testimony, she was a title examiner at the courthouse in Upper Marlboro for ten years and, later, an officer in The Atlantic Mortgage Company for some two years.) Furthermore, the court had before it the testimony of Mrs. Baden concerning the inclusion of the covenant in the deed:

"I had to put that in the deed because that is all I had in the world was that home and I had to protect myself, so that is why I put in there that if at any

time, I had to sell, she was the only conveyance and she was perfectly willing to do it."

Accordingly, although for reasons other than those stated in the opinion of the Chancellor, we conclude he did not err in directing Mrs. Castle to join in the conveyance of the 8.51 acre tract to Prince George's Homes, Inc.

## II

Turning to the contention of Mrs. Baden that the lower court erred in its application of the doctrine of equitable estoppel and that her prayer to transfer the property free and clear of the SBA deeds of trust should have been granted, we first point out that under Maryland Rule 1086 when an action has been tried by the lower court without a jury, we will review the case upon both the law and the evidence; but the judgment of the lower court will not be set aside *on the evidence* unless clearly erroneous, due regard being given to the opportunity of the trial court to judge the credibility of the witnesses.

As previously indicated, Mr. and Mrs. Castle obtained a Small Business Administration loan in the sum of $25,000 from the Home Bank of Sutton, West Virginia on or about March 11, 1971, secured by a deed of trust on the 8.51 acre tract. The Bank did not obtain the signatures of Mr. and Mrs. Baden on the deed of trust. The Chancellor concluded that the Bank was "apparently unaware" of the Badens' interests "as holders of a life estate," else their signatures would have been obtained.

In this respect, the record is frustratingly deficient. A Certificate of Title to the 8.51 acre tract was prepared by Victor L. Edwards, Esq. at the request of Regina Castle [9] in connection with the first SBA loan in March, 1971. According to Mr. and Mrs. Castle, the certificate was transmitted to them by Mrs. Baden and delivered to the attorney representing the lending institution in West Virginia. An envelope addressed to Mrs. Castle in the

---

9. Counsel's statement for services rendered for the certificate; in the sum of $55.00, was sent to Mrs. Castle at Gassaway, West Virginia.

handwriting of Mrs. Baden, bearing her return address, and purporting to be the envelope in which the certificate was mailed, was received in evidence by the Chancellor. Upon objection of *Mrs. Baden's counsel*, however, the certificate itself was not received. Whether the certificate failed to disclose the typewritten contents of the *habendum* clause, as it should have, is unclear.[10]

Similarly, when the second SBA loan (in the sum of $30,000) was obtained by Mr. and Mrs. Castle on August 2, 1972, no signatures were obtained from Mr. and Mrs. Baden. This time, a "Continuation of Title" was provided the lending institution on the letterhead of Suburban Abstract Corporation, Suitland, Maryland, signed by Mark Baden identified by the trial court as "related to the plaintiff as her natural son." In its entirety, the "Continuation" read as follows:

> "A continuation of title abstract from a Deed of Trust dated 3-11-71 recorded 3-19-71 in Liber 3924 Folio 263 from Eugene D. Castle and Regina B. Castle to Jeniver J. Jones, trustee for Loan securing the Home National [sic] Bank of Sutton in the amount of $25,000.00 indicates nothing filed of record in the land records office of the Clerk of Circuit Court for Prince Georges County, Maryland
>
> Our search of the records indicate no liens or judgments filed.
>
> Our search of records is good through July 17, 1972."

Patently, if the earlier Certificate of Title made no disclosure of the Badens' interest in the tract, the void was not filled by the Continuation of Title. In this state of the record, the Chancellor observed: "As a collateral matter the

---

10. Mrs. Baden testified that she used to do title work for Mr. Edwards but did not recall his ever doing any title work on the 8.51 acre tract. Mrs. Castle testified that Mr. Edwards called her "when the title was ready and the certificate of title was ready and I called my mother and asked her if she would pick it up and mail it to us. She mailed it to us in the envelope that we have here in the Court."

Court is satisfied that the Bank acted with reasonable diligence under the circumstances where the parties were in neighboring states and information concerning record title was provided through an attorney in Maryland by way of the interested parties to the West Virginia bank."

While, perhaps, issue might be taken with the conclusion that the Bank acted with "due diligence," [11] this aspect of the case is enormously overshadowed by the evidence before the court that Mrs. Baden — seeking equitable relief — was estopped from obtaining it.

The testimony at trial was in conflict as to whether Mrs. Baden was aware of the deeds of trust which had been placed upon the property by her daughter and son-in-law. Mrs. Castle testified that the first deed of trust was placed in the hands of her mother before it was put on record and that the mother made a telephone call to her son, Mark Baden, who was also then employed in real estate title work, to inquire what obligation would arise if she and Mr. Baden allowed the deed of trust to be put on record. She further testified that Mark Baden responded that since she did not have to sign the obligation the matter was of no concern to her because after their death the property would go to Mr. and Mrs. Castle. Edward Castle also testified that in late 1971 he and his wife discussed with Mrs. Baden their need for additional insurance to cover the first SBA loan and "Mrs. Baden called the Neave Company down in Waldorf and arranged to put the $25,000 on it. The reason for this was that she had to have it for the bank."

On the other hand, Mrs. Baden — who had worked from 1949 to 1969 as a title abstractor — testified that she was unaware of the existence of the loans upon the property until after their recordation when her daughter Regina "let it slip out that she had put a mortgage on." Her son, Mark Baden, also testified that his mother called him when she first discovered the existence of the loans and it was his "impression" that she did not know that the trusts had been

---

11. We observe that no representative of the Bank or the SBA testified below and there is no evidence that title insurance was required by the lender or the Small Business Administration.

78

recorded. Earlier, Mrs. Baden had testified that she never knew there was an SBA loan on the property, that she learned about the first loan in 1971 and Regina assured her it would be released and that she learned of the second loan in November, 1972 when her husband was in the hospital. She admitted that she took no action with respect to either deed of trust until the present suit was filed on March 22, 1973.

In evaluating the testimony, the Chancellor found:

"From the testimony presented at the hearing, *it is apparent to the Court that the Plaintiff, Evelyn Baden, was fully aware of the negotiations going on between the Defendant, Regina B. Castle, her daughter who lived with her, and the bank in West Virginia.* This is further corroborated by testimony demonstrating that the Plaintiff asked not to be named as a party to the Deed of Trust, although Plaintiff then held a life estate in the property, and further by Plaintiff's discussions with her son, Mark Baden, concerning the legal effect of recording the Deeds of Trust without her signature. *Such actions alone would be sufficient to show that the Plaintiff took an active part in misleading the Bank, but testimony also shows that Certificate of Title information was passed through the Plaintiff to the Defendant for use by the Bank in determining record title.* Additionally, Plaintiff increased amounts of insurance covering the subject property following discussions with her son regarding the Deeds of Trust, presumably to insulate the property to a greater extent once additional obligations were placed on the property. *As a collateral matter the Court is satisfied that the Bank acted with reasonable diligence under the circumstances where the parties were in neighboring states and information concerning record title was provided through an attorney in Maryland by way of the interested parties to the West Virginia bank.* Therefore, the Court is of the

opinion that it would only be equitable to retain the Deeds of Trust upon the property in favor of the Home Bank of Sutton, West Virginia, and the Small Business Administration in light of the testimony at the hearing and authority cited." (Underscoring added.)

The Chancellor relied upon the cases of *Machovec v. Shipley*, 171 Md. 339 (1936) and *Savonis v. Burke*, 241 Md. 316 (1966) in support of his holding that under the principle of equitable estoppel Mrs. Baden should not be permitted to transfer the 8.51 acres unencumbered by the two deeds of trust.

In *Savonis, supra*, Judge Barnes, writing for the Court, observed that equitable estoppel operates as a technical rule of law to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert such rights. The Court, also in *Savonis*, quoted the definition of equitable estoppel as contained in Pomeroy's Treatise on *Equity Jurisprudence* (5th ed., vol. 3), § 804, p. 189, adopted by the Court of Appeals and continuously applied by it. The definition is as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed, either of property, or contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

As the *Savonis* opinion points out, normally mere silence would not work an estoppel. However, if a party "who is interested in the transaction disclaims title, and the representation is relied on by another who is ignorant of the true state of the title, even though it may be a matter of public record, then equitable estoppel may apply." *Id.* 241 Md. at 320. Thus, in *Machovec v. Shipley, supra*, the Court of

Appeals held that estoppel barred a suit in ejectment brought by a remainderman who concealed her interest from the parties whom she sought to eject.

In the instant appeal there was substantial evidence to support the Chancellor's findings that Mrs. Baden "took an active part in misleading the bank" and, at the very least, knowingly and voluntarily allowed the property, in which she had a power of conveyance, to be encumbered by the two deeds of trust and was fully aware of the amounts of the obligations involved. We do not find that his conclusions were "clearly erroneous", within the meaning of Rule 1086.

Before this Court, Mrs. Baden attempts to distinguish *Machovec* on the ground that in that case "there were face-to-face meetings between the parties. . . ." We do not consider warranted such a narrow reading of *Machovec*. Nor do we accept the contention of Mrs. Baden that there was here no demonstration on the part of the appellee bank of reliance "on a representation or misrepresentation of the estopped party." The record supports the Chancellor's conclusion that she took an active role in the processes that resulted in the execution of the deeds of trust; and her contention that even assuming *arguendo* a representation or misrepresentation was made by her, it was made to her daughter, Mrs. Castle, rather than to the bank, must be rejected out of hand.

*Decree affirmed; costs to be paid by appellant, Evelyn D. Baden.*