888 A.2d 1189

**Robert C. BERRETT**

v.

**The STANDARD FIRE INSURANCE CO.**

**No. 9, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 23, 2005.

David K. Stesch (Patricia S. Steiger, on the brief), Baltimore, for appellant.

Steven M. Klepper, Baltimore, for appellee.

Panel: HOLLANDER, DEBORAH S. EYLER and
WOODWARD, JJ.

DEBORAH S. EYLER, J.

The Circuit Court for Baltimore City granted summary
judgment in favor of The Standard Fire Insurance Company
("Standard"), the appellee, in a breach of contract claim by
Robert C. Berrett, the appellant. Berrett had alleged in his
complaint that he had an insurable interest in real property
located at 4305 Gallatin Street, in Hyattsville ("the Property");
that the Property had been damaged by fire; and that Stan-
dard had wrongfully denied payment under a homeowner's
insurance policy he had purchased from Standard on the
Property, and that was in effect on the date of the loss.

On appeal, Berrett poses two questions, which can be
reduced to one: Did the circuit court err in granting summary
judgment in Standard's favor?[1] For the following reasons, we
shall reverse the judgment of the circuit court and remand the
case for further proceedings.

## FACTS AND PROCEEDINGS

Berrett is the son of Charlotte H. Berrett. He has four
sisters—June Soroka, Miracle Destiny, Charlene Berrett, and
Carol Berrett—who are daughters of Mrs. Berrett.

According to Berrett, on August 4, 1973, Mrs. Berrett
executed a deed granting the Property to him. The 1973 deed
states that, in consideration for improvements Berrett made to

---

1. The questions as framed by Berrett are:
 A. Whether the Circuit Court erred in finding that Mr. Berrett was
 barred by collateral estoppel and estoppel by admission from as-
 serting an insurable interest in the subject property because he did
 not raise the issue of his interest under an unrecorded deed in an
 earlier guardianship proceeding.
 B. Whether the Circuit Court erred in finding that collateral estoppel
 and estoppel by admission precluded Mr. Berrett from asserting an
 insurable interest in the improvements he made to the property in
 an action to recover for fire damage under an insurance policy
 because he did not raise the issue in an earlier guardianship
 proceeding.

Mrs. Berrett's residence at 2304 Fordham Street, also in Hyattsville,

> I hereby and herein grant to and deliver to my son, Robert Carlyle Berrett all that property ... known as 4305 Gallatin Street. . . .
>
> I covenant that I warranty the property specifically.
>
> It is further agreed herein and the right is reserved by me that I shall retain a life estate in the above described Gallatin Street property and that I shall for my life be entitled to all rents arising out of the property.
>
> It is further agreed that this DEED shall not be recorded until after my death, the death of me, Grantor of this DEED.

In addition to being signed under seal by Mrs. Berrett, the 1973 deed was signed by Berrett and by Vivian Berrett, Mrs. Berrett's sister-in-law.

From some time not clear from the record until late in 1995, Berrett lived in California. He then returned to Maryland. From late 1995 through the Spring of 2000, he lived off and on at the Property and made various improvements to it.

In February 1999, Berrett obtained a homeowner's insurance policy ("Policy") for the Property through Standard. The Policy was in his name alone and was in effect for one year. It provided coverage for, among other things, property damage caused by fire. Berrett renewed the Policy in February 2000. He paid the premiums on the Policy.

On March 22, 2000, in the Circuit Court for Prince George's County, Berrett filed an action seeking appointment of a guardian of the person and property of Mrs. Berrett. In his verified complaint, Berrett stated that Mrs. Berrett was the owner of the Property (and the Fordham Street property as well). He so stated in two subsequent verified complaints in the same action. In other filings in the guardianship action, Berrett again stated that the Property was owned by his mother.

On July 24, 2000, the circuit court held a hearing and found that Mrs. Berrett was disabled and unable to care for her person or property. That same day, by order entered July 25, 2000, the court appointed Theresa Grant, of the Prince George's County Department of Family Services, guardian of Mrs. Berrett's person; and Richard C. Daniels, Esquire, guardian of her property.[2]

On September 12, 2000, Daniels petitioned the court for approval for the sale of the Property. It appears that Daniels had received an offer to purchase the Property for $89,000. Berrett objected to the petition on the ground that the purchase price was too low. On November 8, 2000, after holding a hearing, the court determined that "the ward ha[d] agreed to the sale" and issued an order granting Daniels the authority to sell the Property for $89,000. In the meantime, a contract had been submitted to purchase the Property for that sum.

On November 14, 2000, Berrett filed a motion opposing the court's approval of the contract of sale. He alleged that there was no need to sell the property, as he was supplementing the payments to Mrs. Berrett's nursing home; that $89,000 was not a fair price for the property; and that Mrs. Berrett did not want to sell the Property because she intended to reside there in the future.

Berrett did not inform the guardianship court or the guardians that he had an interest in the Property. He did not submit the 1973 deed to the guardianship court or the guardians, or mention its existence. All the assertions he made to the guardianship court and the guardians were to the effect that his mother was the only person with an interest in the Property.

The contract of sale for the Property provided that it was being conveyed in fee simple and that "[t]he Property is to be held at the risk of Seller until legal title has passed or possession has been given to Buyer." It further stated:

---

2. At some point later in the proceedings, Mrs. Berrett was moved into a nursing home.

If, prior to the time legal title has passed or possession has been given to Buyer, whichever shall occur first, all or a substantial part of the Property is destroyed or damaged, without fault of Buyer, then this Contract, at the option of the Buyer, upon written notice to Seller, shall be null and void and of no further effect. . . .

On November 25, 2000, after the court had approved the contract of sale but before settlement, a fire broke out at the Property, causing substantial damage to it. Thereafter, Berrett made a claim against the Policy.

Standard conducted a lengthy investigation of the claim. On May 10, 2002, during an examination under oath, Berrett produced the 1973 deed. Ultimately, Standard denied Berrett's claim on the ground that he did not have an insurable interest in the Property on the date of the fire.

On November 24, 2003, in the Circuit Court for Baltimore City, Berrett filed suit against Standard for breach of contract.[3] He alleged that Standard had issued, for consideration, the Policy, which was valid and in force on the day of the fire; that the fire loss was a covered risk; that he had an insurable interest in the Property, by virtue of the 1973 deed; that he had resided in the Property at times and had made improvements to it, and therefore had an equitable insurable interest in it as well; and that Standard had wrongfully denied his claim.

Discovery ensued. Berrett's sister June testified that she knew about the 1973 deed. His sister Miracle testified that she did not know about the deed, and, when shown it, questioned the genuineness of her mother's signature. Vivian Berrett (whose last name by then was Baker) testified that she recalled witnessing Mrs. Berrett's signature on the 1973 deed and that it was genuine.

---

3. Berrett also named two other defendants in the suit, and made claims against them. Ultimately, he voluntarily dismissed those claims with prejudice.

On November 24, 2004, Standard filed a motion for summary judgment. It argued that, because the guardianship court had approved the contract of sale for the Property before the fire, Berrett did not have an insurable interest in the Property by the date of the fire, and hence "Maryland law prohibits recovery under the policy." Alternatively, it argued that, even if Berrett had an insurable interest in the Property on the day of the fire, he was precluded by collateral estoppel to raise that issue because the issue of ownership of the Property had been fully and finally decided in the guardianship proceeding, to which Berrett was a party and in which he had an opportunity to assert his interest. Finally, Standard argued, also alternatively, that the doctrine of estoppel by admission applied because Berrett had asserted throughout the guardianship proceeding that Mrs. Berrett owned the Property. For purposes of summary judgment only, Standard assumed that the 1973 deed was valid.[4]

In his opposition to the motion for summary judgment, Berrett argued that he had an insurable interest in the Property under the 1973 deed and that his interest was not extinguished by the contract of sale, because the court-approved sale "had not been consummated" by then. Hence, he had an insurable interest on the day of the fire. He further argued that he was not collaterally estopped to assert his interest in the Property because the issue of insurable interest was not litigated in the guardianship proceeding. Finally, stating, "While one who owns property certainly has an insurable interest in said property, ownership is not the only factor in determining an insurable interest," he argued that estoppel by admission did not apply because his "acknowledgment that his mother was the legal owner of the property in the Guard-

---

4. In support of its motion, Standard submitted exhibits including various filings in the guardianship case, letters from Berrett to the judge in the guardianship case and to Mrs. Berrett's guardians, copies of the petition and the order to approve the contract of sale for the Property, and a transcript of Berrett's deposition.

ianship proceeding [was] not inconsistent with his claim made under the [P]olicy for which he is the named insured."[5]

In a reply memorandum, Standard argued that the 1973 deed, if effective, gave Berrett an indefeasibly vested remainder, and noted that the deed might not have been effective, as it was never recorded.

The court held a hearing on the motion for summary judgment on February 2, 2005. At the conclusion of the hearing, the court stated:

> [I]t seems to the Court and I so find that [Standard] is entitled to have their motion for summary judgment granted for the reasons stated in their memorandum in support of the motion that Mr. Berrett is collaterally estopped from claiming an interest in the property. In his testimony before [the guardianship court] in Prince George's County, he fully acknowledges several times throughout the proceedings, the guardianship proceedings, etc., that his mother was the owner of the property. There is nothing that says he's the owner or has any interest in the property other than an unrecorded deed which didn't give him a remainder interest, it gave him a fee simple interest. He's not claiming that he has a fee simple, had a fee simple interest in the property. He's claiming that he had, his mother had a life estate, there's no document that sets up a life estate and that he had the remainder interest. So I think that he's testified under oath too many times that his mother was the owner of the property to now come in and say no, he was the owner of the property and that's his insurable interest. So, I think he's barred by the collateral estoppel and estoppel by admission. So I will grant their motion for summary judgment. Thank you.

Berrett noted a timely appeal to this Court.

We shall include additional facts as pertinent to our discussion.

---

5. Berrett attached the following exhibits in support of his opposition: a copy of the deed; a copy of the Policy; and transcripts of the depositions of June Soroka, Vivian Baker, and Miracle Destiny.

## DISCUSSION

█ By common law, and as subsequently codified in the Insurance Article, Maryland follows the insurable interest doctrine. That doctrine is based on the public policy of discouraging insurance policies that, in effect, are wagering contracts. *See Bennett v. Mutual Fire Ins. Co.*, 100 Md. 337, 340, 60 A. 99 (1905) (property insurance); *see also Beard v. American Agency Life Ins. Co.*, 314 Md. 235, 257, 550 A.2d 677 (1988) (life insurance). With respect to property insurance, the theory is that one who obtains an insurance policy on property he has no interest in preserving is merely wagering on its loss.

Md.Code (1995, 2003 Repl.Vol.), section 12–301 of the Insurance Article ("Ins."), sets forth the insurable interest doctrine as it pertains to property insurance. An "insurable interest" is "an actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance against loss, destruction, or pecuniary damage or impairment to the property." *Id.* at § 12–301(a). A "contract of property insurance or a contract of insurance of an interest in or arising from property is enforceable only for the benefit of a person with an insurable interest in the property at the time of the loss." *Id.* at § 12–301(b). Finally, as relevant to this case, subsection (c) provides that "[a]n insurable interest in property is measured by the extent of possible harm to the insured from loss, injury, or impairment of the property." *Id.* at § 12–301(c).[6]

The central question in this case is what insurable interest, if any, Berrett had in the Property at the time of the loss, *i.e.*, the day of the fire. Berrett makes two arguments as to why he had an insurable interest. First, under the 1973 deed, he had a remainder interest in the Property that was an insurable interest. Second, because he had made repairs to the

---

6. *Ins.* section 12–301 also contains provisions governing automobile insurance policies, which are not relevant here.

Property, he had an equitable and therefore insurable interest in the value of the repairs.

■ As noted above, for purposes of summary judgment the parties and the circuit court assumed that the 1973 deed is authentic. By the plain language of the deed, Mrs. Berrett granted the Property to Berrett, but reserved a life estate in herself. A life estate may be created by language of reservation. *Bowie v. Bowie,* 208 Md. 623, 626–27, 119 A.2d 436 (1956); *Baden v. Castle,* 28 Md.App. 64, 69–72, 344 A.2d 171 (1975). When property is granted but a life estate is reserved, the grantee acquires a remainder interest. *Baden, supra,* 28 Md.App. at 72–74, 344 A.2d 171. Thus, the deed in this case created a life estate in Mrs. Berrett, by reservation, and a remainder in Berrett.

■ Even though a remainderman does not have the right of present possession of the property, he is held to be seized of his remainder. *Carrier v. Crestar Bank,* 316 Md. 700, 713–14, 561 A.2d 227 (1989). A remainder is vested when it is a present interest held by a certain and definite person to be enjoyed in the future, upon the cessation of the previous (life) estate. *Kemp v. Bradford,* 61 Md. 330, 334–36 (1884). A distinguishing characteristic of a vested remainder is the present capacity to take possession, if the possession by the life tenant were to become vacant, with the certainty that the event on which the vacancy depends will happen at some time. *Id.* A remainder is vested even though the time of enjoyment is postponed or uncertain (as the remainderman may die before the life tenant dies). *Id.*

Here, Berrett's remainder was vested because he is a certain and definite person who will enjoy the Property in the future, upon the cessation of his mother's life tenancy.

■ A vested remainder subject to a life estate is a fee simple interest in property. *Dean v. Director of Finance of Montgomery County,* 96 Md.App. 80, 88, 623 A.2d 707 (1993).

■ A life estate may be created with a right or power of the life tenant to dispose of the property or to use or consume

it in whole or in part. *Burke v. Burke,* 204 Md. 637, 644, 106 A.2d 59 (1954). In that situation, the remainder interest is defeasible. *See In re Trust of Lane,* 323 Md. 188, 197, 592 A.2d 492 (1991). Upon the sale by the life tenant of the property, the remainder interest is destroyed. *Burke, supra,* 204 Md. at 644, 106 A.2d 59. The language of the 1973 deed in this case did not couple the reservation of a life estate in Mrs. Berrett with the right or power to dispose of the Property or use or consume it in whole or in part. Accordingly, the deed granted Berrett a vested, indefeasible remainder interest in the Property.

 A life tenant can sell his or her life estate in property. *See generally Reeside v. Annex Bldg. Ass'n of Balt. City,* 165 Md. 200, 167 A. 72 (1933). The estate as sold becomes an estate *pur autre vie* (for the life of the original life tenant). *Devecmon v. Devecmon,* 43 Md. 335, 348 (1875). A life tenant who does not have the power to dispose of the property cannot convey the remainderman's interest, however. *Reeside, supra,* 165 Md. 200, 167 A. 72. A remainderman likewise can sell his remainder interest in the property, but cannot convey the life tenant's interest. *Culver v. Culver,* 47 Md.App. 579, 588, 425 A.2d 222 (1981).

The 1973 deed that reserved Mrs. Berrett's life tenancy and created Berrett's remainder was not recorded; in fact, the language of the deed directed that it not be recorded until Mrs. Berrett's death. Under Md.Code (1974, 2003 Repl.Vol.), section 3–101 of the Real Property Article ("RP"), "[e]xcept as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, or deed may pass or take effect unless the deed granting it is executed and recorded." The origin of this recording statute is Chapter 14 of the Acts of Assembly of 1766, Laws of Maryland, 1765–1784. *United States v. Gallas,* 269 F.Supp. 141, 148 (D.Md.1967). The purposes of the recording statute are to protect creditors, *Davis v. Harlow,* 130 Md. 165, 168, 100 A. 102 (1917), and to alert purchasers of

land of the interests of others in the land. *Gallas, supra,* 269 F.Supp. at 149.

Notwithstanding the recording statute, it has long been held that a deed that is not timely recorded is effective as a contract between the parties to the deed and as to third persons with notice of it. *Caltrider v. Caples,* 160 Md. 392, 395, 153 A. 445 (1931); *Eden Street Permanent Bldg. Ass'n No. 1 of Balt. City v. Lusby,* 116 Md. 173, 176, 81 A. 284 (1911); *Hearn v. Purnell,* 110 Md. 458, 466, 72 A. 906 (1909). Thus, the 1973 deed was effective as between Mrs. Berrett and Berrett and any other people who had notice of it. It is undisputed that it was not effective against the contract purchasers of the Property, under the contract as approved by the guardianship court, because they did not have notice of it.

The owner of an estate in property can only insure the estate he owns. *Forbes v. A. Int'l Ins. Co.,* 260 Md. 181, 184–86, 271 A.2d 684 (1970). In this case, Mrs. Berrett could insure her life tenancy and Berrett could insure his remainder interest. Berrett could not insure his mother's life tenancy, however. Accordingly, the language of the Policy stated: "Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE ... TO THE INSURED FOR AN AMOUNT GREATER THAN THE INSURED'S INTEREST." The value of a remainder interest in property is the total value of the property minus the value of the life estate. *See Hodel v. Irving,* 481 U.S. 704, 715, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987) (explaining valuation of remainder interests for tax purposes).

As we have set forth in our statement of facts, during the guardianship case, Berrett never revealed the existence of the 1973 deed, that his mother's interest in the Property only was a life tenancy, or that he had a remainder interest in the Property. He argued below and repeats in this Court that he did not disclose that information because he was under the erroneous impression that, under the deed, his mother had the right and power to dispose of the Property. The language of

the deed does not grant any such right or power to Mrs. Berrett, however, so Berrett simply was wrong on that score.[7]

Standard maintains, correctly, that the 1973 deed granted Berrett a vested, indefeasible remainder interest in the Property. As mentioned above, however, it argues that, once the guardianship court approved the contract of sale of the Property—which happened only a matter of days before the fire— Berrett's remainder interest in the Property ceased to exist; therefore, he no longer had an insurable interest in the Property on the date of the loss. Standard's argument on this point is that, because the contract of sale was subject to specific performance by the contract purchasers, who had an equitable interest in the Property, Berrett did not stand to lose anything by the destruction of the Property. Once the contract was authorized by the court, and barring the very unforeseen event that occurred (that the Property would be destroyed or damaged by fire or other peril), it was a foregone conclusion that his remainder interest would be destroyed. The contract payment would be made to the guardianship estate of Mrs. Berrett only; therefore, only Mrs. Berrett had an insurable interest in the Property. Berrett no longer had any "economic interest in the safety or preservation of the [Property] against loss, destruction, or pecuniary damage or impairment[,]" Ins. section 12–301(a), because, due to the impending sale, he had nothing to gain or lose in the Property. The only person with an insurable interest at that point—Mrs. Berrett—was not an insured under the Policy.

Relying on this Court's opinion in *Cigna Property & Casualty Insurance Co. v. Verzi*, 112 Md.App. 137, 684 A.2d 486 (1996), Berrett responds that his remainder interest in the Property was not extinguished by the court-approved contract of sale. Standard replies that *Verzi* actually supports its position, not Berrett's.

---

**7.** We note that, at the outset of the guardianship case, Berrett was represented by counsel. He discharged his counsel, however, and then proceeded *pro se;* he was representing himself during most of the proceedings, including all of the hearings that concerned the sale of the Property.

Before discussing *Verzi*, we shall set out as a general and long-established principle that when an owner of real property enters into an executory contract of sale for the property, he does not lose his insurable interest in the property.

In *Wash. Fire Ins. Co. of Balt. v. Kelly*, 32 Md. 421, 443–44 (1870), the Court held that an executory contract of sale did not deprive the seller of all interest in his property's preservation so as to destroy his insurable interest. For that to happen, so as to preclude the right to enforce the insurance contract, "the right to the property sold and to the possession thereof, must pass from the vendor to the vendees." *Id.* at 436. This "actual and complete alienation" does not occur

> so long as the vendor retains the legal title and continues to have an interest in the preservation of the premises, as security for the payment of the purchase money, or, at all events, until the terms of sale are so far fulfilled as to invest the vendee with the full equitable ownership, and entitle him to the immediate possession of the property sold.

*Id.* at 455 (concurrence). *See also Bennett v. Mut. Fire Ins. Co. of Harford County*, 100 Md. 337, 342–43, 60 A. 99 (1905) (holding that owner who conveyed real property by deed absolute prior to date of fire no longer had an insurable interest in the property).

In *Verzi*, the owner of a building entered into a lease with a convenience store operator in August 1991. The lease was contingent upon the convenience store operator's obtaining permits to demolish the existing building and replace it with a new convenience store. The lease stated that it would be void if the necessary permits were not obtained by July 1, 1992.

On November 4, 1991, before the lessee had obtained the necessary permits (or was required to), the existing building was destroyed by fire. The owner sought to recover the building's replacement value from his insurance company. The insurance company denied the claim on the ground that the owner had not suffered a compensable loss, because the building was going to be demolished, and the owner therefore

did not have an insurable interest in the building. The owner then sued the insurance company in circuit court. The court granted summary judgment in favor of the insurance company.

This Court reversed, holding that, as of the day of the fire, the owner had an insurable interest in the building. After reviewing cases from other jurisdictions, we explained that when the owner has entered into a contract for future demolition of an insured building, he

> may recover from his insurer if demolition has not begun, the building had not been completely abandoned, and the contract is neither irrevocable nor specifically enforceable. Consequently, we conclude that [the insurance company] may not escape its obligation as demolition of the building remained contingent at the time of the loss. "The insurable interest of the parties to an insurance contract must be determined by the facts existing at the time of the loss, and such interest is not defeated by unascertained and speculative future events."

*Id.* at 145–46, 684 A.2d 486 (quoting 4 Appleman, *Insurance Law & Practice*, § 2245, at 167 (1969 & Supp.1995 by Stephen L. Liebo)). *Compare Aetna State Bank v. Md. Cas. Co.*, 345 F.Supp. 903, 909 (N.D.Ill.1972) (holding that owner's buildings were economically useless at the time of the loss, because they were in the process of being torn down and demolition was no longer a matter of conjecture or speculation; hence owner did not have an insurable interest).

 The parties draw an analogy between *Verzi* and this case, given that *Verzi* involved a contract that, if performed, would have resulted in the destruction of the property itself, while this case involves a contract that, if performed, would have resulted in the destruction of Berrett's interest in the Property. Standard argues that, under *Verzi*, because there were no contingencies to the sale of the Property here and the sale already had been court-approved—and upon the sale of the Property, Berrett's remainder interest automatically would be extinguished—that remainder interest no longer had

any economic value. Therefore, on the day of the fire, Berrett had nothing to gain or lose from the continued existence of the Property, and thus did not have an insurable interest in it.

Berrett counters that, under *Verzi*, until the sale actually was consummated, he still was seized of a remainder interest in the Property, and the remainder interest had value. Therefore, on the day of the fire, he had an insurable interest in the Property, and was entitled to payment by Standard under the Policy.

We conclude that Berrett had an insurable interest in his remainder interest in the Property on the date of the fire. Obviously, his remainder interest in the Property was still in existence on that date. The question is whether it was valueless because it necessarily would be extinguished upon settlement. While we agree with Standard that, unlike in *Verzi*, there were no contingencies remaining to be fulfilled before the sale would occur (with the accompanying destruction of Berrett's remainder interest), we disagree that that compels the conclusion that his remainder interest had no value.

As we have explained above, whenever real property held by a life tenant and a remainderman is sold in fee simple, each is entitled to the proceeds according to his or her rightful share; and the life tenancy and remainder interest both are extinguished. Whether Berrett had an insurable interest on the day of the fire depends upon whether he had an interest in the proceeds of the upcoming sale that, once consummated, would extinguish both the guardianship estate's life tenancy and his remainder interest.

While there was no evidence that Berrett made the existence of his remainder interest in the Property known to the guardianship court, there also was no evidence that he consented to the proceeds of the sale going solely to the life tenant (his mother's guardianship estate), instead of to the life tenant and the remainderman (himself), in their rightful shares. The only evidence in this case is that he was mistaken

about the nature of his interest and the life tenant's authority to sell the property and receive the proceeds.

 In fact, given that Berrett had a vested, indefeasible remainder interest in the Property (assuming the validity of the 1973 deed), then, had the fire not happened and the sale gone forward, he would have had a chose in action against his mother's guardianship estate for the value of his remainder interest. A chose in action is a form of property, in that it is an interest in personal property. *See Hitchens v. Safe Deposit & Trust Co. of Balt.*, 193 Md. 53, 61, 66 A.2d 93 (1949) (stating that the right to receive money from proceeds of sale of land is a chose in action, which is an interest in personal property); *see also Deering v. Deering*, 292 Md. 115, 127, 437 A.2d 883 (1981) (contractual right is a chose in action, which is a form of property); *Thomasian v. Thomasian*, 79 Md.App. 188, 198–99, 556 A.2d 675 (1989) (chose in action is a form of property).

Whether Berrett had a chose in action on which he would have prevailed is questionable, given his silence about the 1973 deed during the guardianship proceeding, but is not dispositive of the issue here. It cannot be said that, once the contract of sale was approved by the guardianship court, Berrett had no economic interest in the preservation of the Property, and therefore no insurable interest. He had a right to make a claim against the guardianship estate, *i.e.*, the life tenant, for his proper share of the proceeds of the sale, regardless of whether he would prevail; that chose in action was a sufficient interest in the preservation of the Property to be an insurable interest.

 We disagree with two points expressly decided by the circuit court in its summary judgment ruling. First, the doctrine of collateral estoppel does not apply here. The elements of that doctrine are:

(1) there was a final judgment on the merits in the prior litigation;

(2) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior litigation;

(3) the issue decided in the prior litigation is identical with the issue presented in the subsequent litigation;

(4) the issue actually litigated was essential to the judgment in the prior action.

*Deitz v. Palaigos,* 120 Md.App. 380, 395, 707 A.2d 427 (1998). In the guardianship case, the issue of the nature of Berrett's interest in the Property was not adjudicated and was not essential. Indeed, from what we see in the record, the guardianship estate still is in existence, and the issue of Berrett's interest in the proceeds of the sale of the Property may yet be raised and decided there.

Second, we disagree that the doctrine of judicial estoppel applies here. That doctrine prohibits a litigant from "blowing hot and cold," by taking one position that is accepted by one court and advocating a completely contrary position in another court, to try to gain advantage. *Vogel v. Touhey,* 151 Md.App. 682, 722, 828 A.2d 268 (2003) (citing *Eagan v. Calhoun,* 347 Md. 72, 88, 698 A.2d 1097 (1997)). The purpose of the doctrine is to protect the integrity of the court system. *Id.*

Here, the evidence on summary judgment is that Berrett, who was not represented by counsel during the critical portion of the guardianship case, did not understand the nature of his interest in the Property and did not speak up about it for that reason. He did not take a position about his interest in the Property. The court did not accept any position that he took with respect to his interest in the Property, as he did not assert one. In this case, he is represented by counsel and is now aware of the nature of his interest in the Property. The positions he has taken in the two cases are not completely inconsistent.

For the foregoing reasons, we shall reverse the judgment of the circuit court and remand the case for further proceedings not inconsistent with this opinion.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR**

FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEE.