## GLENS FALLS INSURANCE COMPANY *v.* STERLING ET UX.

[No. 146, September Term, 1958.]

*Decided February 19, 1959.*

*Motion for rehearing filed March 11, 1959, denied March 19, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Walter C. Anderson* and *John W. T. Webb,* with whom were *Webb & Travers* on the brief, for the appellant.

*Stanley G. Robins,* with whom were *John B. Robins* and *Robins & Robins* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

Although there is but one question involved in this appeal, it is an important one: Can there be a recovery under a fire and windstorm insurance policy when the holders thereof fail to show a *pecuniary loss* from the damage to the property covered thereby as a result of wind?

During May of 1956, the appellees, Tony R. Sterling and his wife, acquired a lot in the Town of Quantico, Wicomico County, with the intention of erecting a dwelling thereon. Needing financing, they went to a loan organization for the purpose of obtaining a commitment that a loan would be made from some responsible organization. At the time of applying for the loan, they were asked if they had insurance on the property and upon giving a negative answer, they were issued the policy sued on, the date thereof being September 21, 1956.

The appellees entered into a contract for the construction of their home with Roland H. Fitzgerald, a general contractor, at a figure approximating $13,000. Neither the date nor all of the terms of the contract are available as the contract was not offered in evidence. Construction of the house began shortly after the issuance of the policy and it was to be built according to plans prepared by or for the owners. The building had progressed to the point where three of the four walls were completed to their prescribed height, with the fourth, or north, wall nearly completed, when, on or about

October 31, 1956, as a result of a windstorm the north wall was blown over or caused to collapse. The other walls remained standing, but had to be taken down later by the workmen. The actual replacement cost of the damage was $5,004.33.

The insurer undertook, by the policy sued on, to insure Sterling and his wife against all "direct loss by fire" and other hazards, causing damage to the building named therein, and by an endorsement extended the insurance in this manner:

"It is a condition of this Extended Coverage Endorsement that if this insurance covers on a building in process of construction * * * that, subject to all the provisions and stipulations of this policy * * * this insurance is extended to cover direct loss to the described property caused by Windstorm * * *, whether or not said building is entirely enclosed and under roof * * *."

There is also a subrogation clause in the policy that provides:

"The Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

At the trial below, the appellees failed to offer any proof that they had sustained or suffered any *actual* loss from the damage to the building insured. On the contrary, they were content to have the contractor state what the total cost of restoration as a result of the windstorm had been, without any showing of their responsibility, liability or loss from its occurrence. The contractor, a witness called for and on behalf of the appellees, testified that it was his full responsibility, under his agreement with the owners, to deliver a completed house to them for the price named in the agreement. The appellees not only failed to establish a pecuniary loss upon their part, as stated above, but, when afforded an opportunity to do so by the insurer, declined the offer. When

the appellee, Sterling, was upon the stand, the following colloquy between him and the insurer's counsel took place:

"Q. That's the price [the contract price] you paid for the house? A. No sir.

"Q. How much did you pay? A. I don't think I have to answer that, do I?

"Q. * * * Well, don't you want to answer it? You don't have to answer it if you don't want to. A. I don't want to answer it."

It seems as though this is the first time that this exact question has been before this Court. There are two opposing lines of cases that have dealt with the principle involved. For convenience, we shall refer to them as the "New York rule" and the "Wisconsin rule." All of the cases that follow the New York rule refer back to the case of *Foley v. Manufacturers' & Builders' Fire Ins. Co.,* 46 N. E. 318 (N. Y., 1897); and the ones that follow the Wisconsin rule refer back to *Ramsdell v. Insurance Co. of North America,* 221 N. W. 654 (Wis., 1928).

The *Foley* case turned upon the question of insurable interest. The Court held that the owners of real estate upon which buildings were in the process of construction had an insurable interest equal to the full value of the incomplete buildings when a fire occurred; that the rights of the parties were to be determined as of the time of loss; that the owners possibly would receive double compensation; and, while a fire insurance policy is one of indemnity, the fact that the owners had, by agreement with the construction contractors, imposed upon such contractors the risk and expense of furnishing completed buildings, this was no concern of the insurer, which could not compel the owners to put the loss upon the contractors by requiring the owners to recoup the damage from the contractors. It will be noted here that, contrary to the case at bar, there was no contention that the contractors had, prior to the trial, actually borne the loss. The principle of the *Foley* case has been followed in Massachusetts, Michigan, Pennsylvania and, perhaps, a few other states.

In the *Ramsdell* case, *supra* (The Wisconsin rule), a

lessee, in accordance with the terms of his lease, made betterments to the property that he had rented. Both the lessors and lessee insured their respective interests in the property. In case of fire, neither was required to restore the building, but either might do so. A fire occurred and loss resulted. The lessee restored the building and recovered the loss from its insurance company. The lessors sued upon their insurance policies. The trial court determined that the rights of the parties were fixed at the time of loss, the lessors had an insurable interest that was conceded and the policies were valid; and concluded (as did the Court in the *Foley* case) that these facts entitled the lessors to recover. The Supreme Court of Wisconsin, however, reversed. The Court pointed out that there was one building insured, one fire and one loss; that, under the terms of the policies, the insurer had the right to restore the building to its former usefulness; that where the restoration was done by other related parties by contract, as distinguished from a volunteer, it would defeat the right of recovery by those who had no loss *in fact,* stating, "[t]he court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss." This case was followed in a well-considered opinion in *Beman v. Springfield Fire & Marine Ins. Co.,* 25 N. E. 2d 603 (Ill., 1940). See also *Schultz v. Home Ins. Co. of New York,* 205 Ill. App. 297, where the facts are very similar to those in the case at bar.

In *Edlin v. Security Insurance Company,* 160 F. Supp. 487 (D. C. S. D., Ill., 1957), the Court points out with clarity that a fire insurance contract is one of indemnity against such loss as the *insured* may sustain by reason of the damage to the property (not the amount of damage to the *property*) and where no financial or pecuniary loss has been sustained by virtue of the damage to the property, there can be no recovery under such an insurance policy. See also the numerous cases cited in 45 C. J. S. *Insurance* Sec. 915, notes 20, 21, 22, to the same effect.

The principle of the *Foley* case, *supra,* is criticized in an annotation in 68 A. L. R. 1344, as follows:

"Obvious as the solution of the question may seem at first glance, upon general principles of insurance law, it has not been free from difficulty, with the result that it has led the courts to apparently divergent views. It is sometimes stated as a general proposition that the insured so circumstanced is entitled to recover the whole amount of the loss, not exceeding the amount of insurance, regardless of the nature and extent of his peculiar interest. * * * Such a rule, it seems, is of questionable soundness both in point of principle and precedent, in view of the fact that the essential nature of an insurance contract is one of indemnity, and not of profit. Adherence thereto would convert insurance into a wagering device."

We think that logic, reason and justice, as well as the previous decisions of this Court, commit us to the doctrine enunciated in the *Ramsdell* case, *supra.* It is an elementary principle of insurance law that fire insurance (and we place windstorm insurance attached by endorsement to a fire insurance policy in the same category) is a contract of personal indemnity, not one from which a profit is to be realized. As early as 1847, this Court stated that a fire insurance policy was a contract of indemnity and the right to recover "must be commensurate with the loss *actually* sustained" by the insured. (Italics supplied.) *Franklin Fire Ins. Co. v. Hamill,* 6 Gill 87, 95. See also *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421, 436; *Palatine Ins. Co. v. O'Brien,* 107 Md. 341, 354; *Rent-A-Car Co. v. Fire Ins. Co.,* 158 Md. 169, 175.

We think the correct rule is simply and clearly stated in 44 and 45 C. J. S. *Insurance* Sections 224 and 915, where it is said:

"Fire insurance is a personal contract with insured, and not a contract in rem, its purpose being not to insure property against fire, but to insure the owner of the property against loss by fire."

"Since a contract for insurance against fire ordinarily is a contract of indemnity, * * * insured is

entitled to receive the sum necessary to indemnify him, or to be put, as far as practicable, in the same condition pecuniarily in which he would have been had there been no fire; that is, he may recover to the extent of his loss occasioned by the fire, but no more, and he cannot recover if he has sustained no loss."

See to like effect, 6 Appleman, *Insurance Law and Practice,* Section 3861, pp. 207, 208.

As the plaintiffs-appellees failed to prove any actual pecuniary loss to themselves as a result of the damage to the building under construction, we must reverse the judgment appealed from, which renders it unnecessary to consider the other points raised by the appellant.

Our decision is, of course, based upon the facts of this particular case. We express no opinion, at this time, upon the question that would have been presented had the contract between the owners and the builders, with reference as to who was to bear the risk of the loss, not been performed.

*Judgment reversed: the appellees to pay the costs.*