## MISSION NATIONAL INSURANCE COMPANY, Plaintiff,

### v.

**Lowell M. SCHULMAN, Schulman Investment Company, and United Organics Corporation, Defendants.**

### Civ. No. B 84–811 (TFGD).

United States District Court, D. Connecticut.

June 6, 1986.

Memorandum and Order May 13, 1986.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, Conn., Elliott R. Feldman, Cozen, Begier & O'Connor, Philadelphia, Pa., for plaintiff.

Livia D. Barndollar, Tyler, Cooper & Alcorn, Stamford, Conn., Kevin A. Coles, Cotter, Cotter & Sohon, P.C., Bridgeport, Conn., William H. Champlin, III, Tyler, Cooper & Alcorn, Hartford, Conn., for defendants.

---

DALY, Chief Judge.

After review and absent objection, the Magistrate's recommended ruling is hereby ADOPTED, APPROVED, and RATIFIED.

## MEMORANDUM AND ORDER

THOMAS P. SMITH, United States Magistrate.

This action sounding in tort and contract relates to a property insurance policy issued by the plaintiff to the defendants Schulman and Schulman Investment Company ("Schulman") for a building leased by Schulman to the defendant United Organics Corporation ("UOC"). Pending before the court is Schulman's motion for summary judgment, Rule 56, F.R.Civ.P. For the reasons set out below, that motion should be denied.

The recitation of pertinent facts begins with the execution of the insurance policy ("policy") for a building owned by Schulman located at 387 Ludlow Street, Stamford, Connecticut ("Building 13") and occupied by lessee UOC. Paragraph 19 of the policy detailed a subrogation agreement. A subrogation receipt signed by Schulman contained the warranty that "no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and [that] no release has been given to anyone responsible for the loss ..." The lease agreement between Schulman and UOC, a manufacturer of chemicals, provided, inter alia, that (1) "the tenant shall keep the demised premises in good condition ... and free from trash, inflammable material, explosive materials and noxious odors, that (2) the tenant agrees to indemnify and save the landlord harmless from all claims and liability for losses of a damage to property, and that (3) the tenant agrees to comply with all laws, ordinances, rules and regulations ... applicable to the business to be conducted by the tenant in the demised premises ..."

Fire substantially destroyed Building 13 on January 4, 1983. The plaintiff then paid Schulman a settlement in April 1983 of $191,921.00, following Schulman's execution of a sworn statement in proof of loss and subrogation receipt described above.[*] After learning from the Stamford Fire Marshall's Office that the fire was caused by a chemical reaction among the chemicals used by UOC and that the absence of fire detection and extinguishing devices, among other things, contributed to the spreading of the fire, the plaintiff placed UOC on notice of its subrogation claim, only to be informed by UOC on November 20, 1984, that it had repaired all fire damage to the property.

The plaintiff filed suit after learning that UOC had repaired the damaged building. Count One alleges breach of contract against Schulman relating to the subrogation agreement. Count two alleges fraud and misrepresentation against Schulman relating to the subrogation agreement and the proof of loss statement submitted by it. Count three alleges the breach of subrogated agreements with UOC relating to maintaining Building 13 and the fire that occurred there. Count four alleges the breach of subrogated agreements with UOC relating to maintenance and compliance with applicable laws and codes. Only counts one and two against Schulman are at issue here. As part of its answer, Schulman admitted that "the defendants ... were aware of the repairs made by United Organics Corporation," while UOC pled accord and satisfaction with Schulman as a special defense.

It is of course well settled that to prevail on a motion for summary judgment the moving party must demonstrate the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). In judging the merits of such a motion the court resolves all ambiguities and draws all reasonable inferences in favor of the party against whom summary judgment is sought. *Id.* Accordingly, on a defendant's motion for summary judgment, the court considers all pleadings and other evidence in a light most favorable to plaintiff.

[*] Schulman then invested this money in commercial paper.

Schulman's argument supporting its motion for summary judgment is direct and focuses on whether it incurred the loss reported to the plaintiff despite the fact that Building 13 was repaired by UOC at no cost to Schulman. This issue, it contends, is determined by the application of New York law, given that the insurance contract was executed in New York and because "generally Connecticut applies the law of the place of a contract to determine the validity and construction of the contract."

No genuine issue of material fact exists, Schulman argues because, under the so-called New York rule governing insurance contracts and the role of third parties in making repairs at no cost to the insured, UOC's action in repairing Building 13 is irrelevant to the analysis and has no effect on the loss incurred by it because its loss occurred at the time of Building 13's destruction. All subsequent events simply do not matter under the analysis set out in *Alexandra Restaurant, Inc. v. New Hampshire Insurance Co. of Manchester,* 272 App.Div. 346, 71 N.Y.S.2d 515 (1947), *affirmed* 297 N.Y. 858, 79 N.E.2d 268, which noted in part, citing the landmark New York case on the issue, that "the fact that improvements on land may have cost the owner nothing or that if destroyed by fire, he may compel another person to replace them without expense to him, or that liability of a third person in no way affects the liability of an insurer, in the absence of any exemption in the policy. *Foley v. Manufacturers' Fire Insurance Company,* 156 N.Y. 131, 133, 76 N.E. 318, 319 (1897)."

While Schulman's statement of the law relating to Connecticut's governing choice of law principles is accurate as far as it goes, it nonetheless is not the applicable statement of the law here because it fails to consider that in cases such as the one at bar the place of performance essentially controls the choice of law analysis. *See Cunninghame v. Equitable Life Assurance Society of the United States,* 652 F.2d 306, 308 n. 1 and cases cited therein (2d Cir.1981)(per curiam). Since the insurance policy at issues here covered property in Connecticut, there is but little question that Connecticut law controls.

Though Connecticut has as its capital the insurance capital of the world, it has yet to address squarely the issue of whether the so-called New York rule or the so-called Wisconsin rule relied upon by the plaintiff should apply in circumstances such as the one now before the court. As a result, this court, sitting in diversity, must make an estimate of what the Connecticut Supreme Court would do if faced with this issue. *Brastex Corp. v. Allen International, Inc.,* 702 F.2d 326, 330 (2d Cir.1983); *Cunninghame, supra,* 652 F.2d at 308; *Murphy v. Marmon Group, Inc.,* 562 F.Supp. 856, 859 (D.Conn.1983) (Zampano, J.).

In contrast to the New York rule, the Wisconsin rule, principally set out in *Ramsdell v. Insurance Company of North America,* 197 Wis. 136, 221 N.W. 654 (1928), looks not only to the relationship between insurer and insured but to the actions of the third party to determine whether a cognizable loss has occurred. The *Ramsdell* court noted that it looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss.

The clash between the New York and Wisconsin rules has split the jurisdictions that have considered the issue. *See, e.g., Citizens Insurance Company v. Foxbilt, Inc.,* 226 F.2d 641, 644 (8th Cir.1955) (cases cited therein). Courts that have followed—wisely, in this court's opinion—the Wisconsin rule have focused on the nature of the insurance contract itself. The Maryland Appellate Court in *Glens Falls Insurance Company v. Sterling,* 219 Md. 217, 148 A.2d 453, 454 (1959), for example, explicitly contrasted the two theories, writing that "we think that logic, reason, and justice as well as the previous decisions of the court, commit us to the doctrine enunciated in the *Ramsdell* case, *supra.* It is an elementary principle of insurance law that fire insurance ... is a contract of personal indemnity, not one from which a profit is to be realized. As early as 1847, this court stated that a fire insurance policy was a contract of indemnity and the right to recover

'must be commensurate with the loss actually sustained by the insured.'" This position is echoed, first, in 44 C.J.S. Insurance § 224, where we find that "fire insurance is a personal contract with the insured and not a contract in rem, its purpose being not to insure property against fire, but to insure the owner of the property against loss by fire." And, second, in 45 C.J.S. Insurance § 915, it is stated that "since a contract for insurance against fire ordinarily is a contract of indemnity ... [the] insured is entitled to receive the sum necessary to indemnify him, or to be put, as far as practicable, in the same condition pecuniarily in which he would have been had there been no fire; that is, he may recover to the extent of his loss occasioned by the fire, but no more, and he cannot recover if he has sustained no loss." To follow the contrary principle, it has been suggested, "would convert insurance into a wagering device." 66 A.L.R. 1344.

■ This court's determination that Connecticut would follow the Wisconsin rule does not rest merely on the wisdom of that rule, as an intermediate Connecticut appellate court has made clear that Connecticut also considers the type of contract at issue here to be a contract of indemnity. In *Hartford Accident and Indemnity Co. v. Chung,* 37 Conn.Sup. 587, 429 A.2d 158, 160–169 (Conn.Super.Ct.1981), the Appellate Session of the Connecticut Superior Court, on facts similar to the ones involved here, said that "it is from the very nature of a contract of insurance as a contract of indemnity that the insurer, upon paying to the insured the amount of a loss, total or partial, becomes ... subrogated in a corresponding amount to the insured's right of action against the person responsible for the loss." That Connecticut considers a fire insurance policy to be a contract of indemnity is, as a result, persuasive on the issue of whether the Connecticut Supreme Court would follow the Wisconsin rule, given that that rule has as its central principles the characterization of a fire insurance policy as one of indemnity and the principle that there can be no loss if a third party has made repairs at no cost to the insured,

which, of course, is precisely what occurred here.

■ Having disposed of Schulman's argument that it is entitled to summary judgment as a matter of law, the issue narrows to whether there exists a genuine issue of material fact. This issue is easily disposed of in light of UOC's affirmative defense of full accord and satisfaction and Schulman's submission of a proof of loss statement. Schulman's argument that UOC did not understand what it was saying when pleading this defense is not well taken, making it clear that a genuine issue of material fact exists as to whether Schulman violated the plaintiff's subrogation rights and entitled the plaintiff to recover the insurance proceeds paid to Schulman. *See Federal Insurance Company v. Plaza Drugs, Incorporated,* 333 F.Supp. 1305, 1308 (D.D.C. 1971) (insurer had cause of action against insured with whom insurer settled after insured's false representation to insurer that it had made no settlement and given no release to anyone responsible for the loss.) Without addressing other factual issues, it is clear that on this issue alone, Schulman's motion for summary judgment should be denied.