684 A.2d 486

**CIGNA PROPERTY & CASUALTY INSURANCE COMPANY**

v.

**Douglas W. VERZI.**

No. 2019, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Nov. 6, 1996.

138

Michael B. Mann, Towson, for Appellant.

David E. Carey (Albert J.A. Young and Brown, Brown & Brown, P.A., on the brief), Bel Air, for Appellee.

Argued before WENNER, CATHELL and EYLER, JJ.

WENNER, Judge.

Cigna Property and Casualty Insurance Co. (Cigna), appeals from the Circuit Court for Harford County's grant of summary judgment in favor of Douglas W. Verzi (Verzi). On

appeal, Cigna inquires whether the circuit court erred in granting Verzi's motion for summary judgment.[1]

Finding no error, we shall affirm the judgment of the circuit court.

## FACTS

Verzi contracted with Cigna for $100,000 of fire insurance covering a building owned by Verzi at 4101 Norrisville Road in White Hall, Maryland ("the building"). The policy was in effect from 6 October 1991 to 6 October 1992, and the building was destroyed by fire on 4 November 1991.

Three months prior to the fire, Verzi had entered into an agreement with High's to lease and demolish the building, and construct a convenience store. Pending demolition of the building, Verzi was permitted to store personal effects in it until 1 March 1992.

The lease was contingent upon High's obtaining the necessary permits for demolishing the building and replacing it with a High's Dairy Store, including gasoline pumps. The agreement would be void if High's was unable to obtain the necessary permits by 1 July 1992. High's acquired the permits on 23 May 1992, more than six months after the building had been destroyed by fire.

---

1. In its brief, Cigna phrases its issues as follows:
    1. Whether the lower court erred when it denied [Cigna's] Motion for Summary Judgment, failing to rule as a matter of law that there was no pecuniary loss to [Verzi] as a result of the fire, and, therefore, that Verzi was not entitled to recover under the insurance policy with [Cigna]?
    2. Whether the lower court erred when it granted [Verzi's] Motion for Summary Judgment, ruling as a matter of law that [Verzi] was entitled to recover the insurance proceeds under the existing fire insurance policy with [Cigna]?
    3. Whether the lower court erred when it ruled as a matter of law that [Verzi] was entitled to recover the full replacement cost of his building as a result of the damage in the fire, and, therefore, granted judgment in favor of [Verzi] against [Cigna] in the amount of $1000,000.00?

In April 1992, Verzi sought to recover from Cigna the building's replacement value. Cigna denied the claim on the grounds that Verzi had suffered no compensable loss, as the building was to be demolished.[2]

## I.

In reviewing a grant of a summary judgment, our standard "is simply whether the trial court was legally correct." *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). Maryland Rule 2–501(e) provides that, the

> court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

As the parties agree that there are no disputed facts, we turn to whether the trial court was legally correct in granting summary judgment in favor of Verzi.

## II.

■ Despite the parties agreeing that there are no disputed material facts, the legal significance of those facts is disputed. The parties agree that the building was insured when it was destroyed by fire subject to Verzi's conditional agreement with High's to demolish the building. It was also agreed that demolition of the building was contingent on High's obtaining the necessary permits.

According to Cigna, *Glens Falls Ins. Co. v. Sterling*, 219 Md. 217, 148 A.2d 453 (1959), is dispositive. We do not agree.

In *Glens Falls*, the Sterlings had obtained insurance on a home under construction. Before being completed, it suffered substantial windstorm damage. The construction contract

---

**2.** The policy provided coverage for "the 'actual cash value' at the time of loss" for damaged buildings which the insured does not choose to replace or repair. The policy does not indicate how the actual cash value of such buildings would be affected by the existence of a conditional contract for the future demolition of such buildings.

required the builder to repair the damage at no additional cost. Despite seeking recompense from their insurer, the Sterlings offered no evidence of actual pecuniary loss. Consequently, the claim was denied. The Sterlings then sued their insurer.

The issue presented on appeal was "[c]an there be a recovery under a fire and windstorm insurance policy when the holders thereof fail to show a pecuniary loss from the damage to the building covered thereby as a result of wind?" *Glens Falls*, 219 Md. at 218, 148 A.2d 453. The Court of Appeals had not been previously faced with that issue. After considering the "New York" and "Wisconsin" rules, the Court adopted the Wisconsin rule, the genesis of which is *Ramsdell v. Insurance Co.*, 197 Wis. 136, 221 N.W. 654 (1928).

In *Ramsdell*, the building destroyed by fire had been insured by both the lessor and the lessee. Although neither was required to restore the building, it was restored by the lessee, who was reimbursed by his insurer. Subsequently, the lessor sought to recover from its insurer, despite having contributed nothing to the restoration of the building.

The Supreme Court of Wisconsin said:

[T]here was one building insured; there was one fire; there was one loss. . . . Now it is practically the uniform rule that one must have an insurable interest and a loss before one can collect on a policy of insurance. . . . We agree that the damage is to be determined as of the time of the fire. But recovery is contingent on the right of the insurer to restore the building to its former usefulness. When there are other related parties by contract, may not the building be restored by others who have the right to do so, and thus defeat the right of recovery by one who has no loss in fact? The court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss.

*Ramsdell*, 221 N.W. at 655; *see also Beman v. Springfield Fire & Marine Ins. Co.*, 303 Ill.App. 554, 25 N.E.2d 603, 607 (1940); *Mission Nat. Ins. Co. v. Schulman*, 659 F.Supp. 270,

273 (D.Conn.1986); *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.*, 27 Wis.2d 112, 133 N.W.2d 737 (1965).

The New York rule flows from *Foley v. Manufacturers' & Builders' Fire Ins. Co.*, 152 N.Y. 131, 46 N.E. 318 (1897). The issue in *Foley* was whether the Foleys "had an insurable interest equal to the full value of the incomplete buildings in the course of construction on their lot when the fire occurred." 46 N.E. at 318. According to the *Foley* Court, the owners

> had no interest to protect in the structures while in their incomplete state, since their destruction by fire would be the loss of the contractors, and not of the owners.... The fact that improvements on land may have cost the owner nothing, or that, if destroyed by fire, he may compel another person to replace them without expense to him, or that he may recoup his loss by resort to a contract liability of a third person, in no way affects the liability of an insurer, in the absence of any exemption in the policy.

*Id.* at 318–19.

On the other hand, the Court of Appeals in *Glens Falls* adopted the Wisconsin rule, finding it to be in conformity with the

> elementary principle of insurance law that fire insurance ... is a contract of personal indemnity, not one from which a profit is to be realized. As early as 1847, this Court stated that a fire insurance policy was a contract of indemnity and the right to recover 'must be commensurate with the loss *actually* sustained' by the insured. [citations omitted] ... '[The insured] may recover to the extent of his loss occasioned by the fire, but no more, and he cannot recover if he has sustained no loss.'

219 Md. at 222–23, 148 A.2d 453 (quoting 44 & 45 C.J.S. INSURANCE §§ 224, 915).

The Court said, however, that its decision was "based upon the facts of [that] particular case," *id.* at 223, 148 A.2d 453, and expressed "no opinion ... upon the question that would have been presented had the contract between the owners and the builders, with reference as to who was to bear the risk of

the loss, not been performed." *Id.* Hence, *Glens Falls* applies to situations such as that then before the Court. An example of *Glens Falls'* situation is when more than one party has insured the property and the loss has been recovered by one of them, but another seeks recovery from its insurer. Another is when an insured has two available sources of recovery and seeks to recover from both. Under such circumstances, *Glens Falls* is apposite. As we have said, the New York rule deems it irrelevant that an insured has recovered from another source, while "[The Wisconsin] rule has as its central principles the characterization of a fire insurance policy as one of indemnity and the principle that there can be no loss if a third party has made repairs at no cost to the insured...." *Mission Nat. Ins. Co. v. Schulman,* 659 F.Supp. 270, 273 (D.Conn.1986).

In the case at hand, the building was insured only by Cigna and the loss was suffered only by Verzi. Thus, we do not believe *Glens Falls* is apposite.

In *Glens Falls,* the insured had not only an insurable interest, but had also suffered a pecuniary loss. As the Court of Appeals said, the "court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss." *Id.* at 221, 148 A.2d 453 (quoting *Ramsdell, supra,* 221 N.W. at 655.). In the case before us, the trial court looked to the substance of the whole transaction, noting that Verzi had suffered a loss prior to the building being demolished. Although not previously addressed by Maryland's appellate courts, such circumstances have been considered by other jurisdictions.

## III.

A majority of both state and federal courts have held that, when a building is destroyed by fire or other disaster, the insured may recover from its insurer despite the building being subject to removal, provided it is destroyed before its removal. 46 C.J.S. § 1106.c; *see e.g., Godwin v. Iowa State Ins. Co.,* 27 S.W.2d 464 (Mo.Ct.App.), *cert. denied,* 282 U.S.

880, 51 S.Ct. 83, 75 L.Ed. 777 (1930); *American Home Fire Assurance Co. v. Mid West Enter. Co.,* 189 F.2d 528 (10th Cir.1951); *Garcy Corp. v. Home Ins. Co.,* 496 F.2d 479 (7th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (1974). This is especially so when, as here, the building's demolition is contingent. As we have said, demolition of the building was contingent on High's obtaining the necessary permits for replacing it with a High's Dairy Store, and the permits were not obtained until six months after the loss.

*Aetna State Bank v. Maryland Casualty Co.,* 345 F.Supp. 903 (N.D.Ill.1972) is a similar case. In *Aetna,* a borrower secured from Aetna sufficient funds to acquire a building. After insuring the building,[3] without Aetna's knowledge the borrower entered into a contract to have the building demolished. Demolition had begun when the building was destroyed by fire, and coverage was denied.

On appeal, the *Aetna* Court said

that actual cash value is not the proper criteria for determining the amount of loss for property which is in the process of being demolished and whose demolition at the time of loss is no longer a matter of conjecture or speculation and we hold that although the insurance policies were in effect at the time of loss the mortgagee having met its obligations, there is nevertheless no compensable loss in view of the fact that there is no value to buildings in the process of demolition.

We agree with the *Aetna* Court that, unless demolition has actually begun, and is no longer "a matter of conjecture or speculation" at the time of loss, courts should not "risk opening up 'a Pandora's box' of collateral issues by allowing the amount of loss to be determined by the relative value to the insured at the time of loss." *Paterson–Leitch Co. v. Insurance Co.,* 366 F.Supp. 749, 756 (N.D.Ohio 1973) (quoting *Aetna,* 345 F.Supp. at 908). This illustrates that in determin-

---

3. The borrower secured multiple policies covering the total cost of the real property and improvements.

ing both an insurable interest and a pecuniary loss, the building's possible demolition should not be considered. The possibility may never occur.

In *Garcy Corp. v. Home Insurance Co.*, 496 F.2d 479 (7th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (1974), an owner of five buildings entered into a contract to have them demolished. After demolition of the first four had begun, the fifth was destroyed by fire. In attempting to recover the loss from his insurer, the owner presented not only evidence of his endeavoring to sell the fifth building, but that its demolition would have been halted had he been successful. The *Garcy* court held him to be entitled to recover the loss.

In reaching its conclusion, after reviewing cases from other jurisdictions, the *Garcy* court said, while there may be a number of ways of considering this issue, "the critical factual question almost always is whether the insured had abandoned the building pursuant to an irrevocable commitment to demolish it." 496 F.2d at 481. Even though demolition is imminent, the insured may recover the loss unless demolition has begun. *Paterson–Leitch, supra,* 366 F.Supp. 749.

Virtually all of the cases from other jurisdictions have relied on *Aetna* and *Garcy* in holding that an insured may recover from his insurer if demolition has not begun, the building had not been completely abandoned, and the contract is neither irrevocable nor specifically enforceable.[4] Consequently, we

---

4.  *See Garcy Corp. v. Home Ins. Co.*, 496 F.2d 479 (7th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (1974); *Knuppel v. American Ins. Co.*, 269 F.2d 163, 164 (7th Cir.1959); *Godwin v. Iowa State Ins. Co.*, 27 S.W.2d 464 (Mo.Ct.App.), *cert. denied*, 282 U.S. 880, 51 S.Ct. 83, 75 L.Ed. 777 (1930); *Aetna State Bank v. Maryland Casualty Co.*, 345 F.Supp. 903 (N.D.Ill.1972); *Gendron v. Pawtucket Mut. Ins. Co.*, 384 A.2d 694, 697 (Me.1978), *appeal after remand*, 409 A.2d 656 (Me.1979); *Paterson–Leitch Co. v. Insurance Co.*, 366 F.Supp. 749, 753 (N.D.Ohio 1973); *American Home Fire Assurance Co. v. Mid–West Enter. Co.*, 189 F.2d 528, 534 (10th Cir.1951); *Wolf v. Home Ins. Co.*, 100 N.J.Super. 27, 241 A.2d 28, *aff'd*, 103 N.J.Super. 357, 247 A.2d 345 (1968); *Board of Educ. v. Hartford Fire Ins. Co.*, 124 W.Va. 163, 19 S.E.2d 448 (1942); *And see Royal Ins. Co. v. Sisters of Presentation*, 430 F.2d 759 (9th

conclude that Cigna may not escape its obligation as demolition of the building remained contingent at the time of the loss. "The insurable interest of the parties to an insurance contract must be determined by the facts existing at the time of the loss, and such interest is not defeated by unascertained and speculative future events." 4 Appleman, INSURANCE LAW & PRACTICE § 2245, at 167 (1969 & Supp.1995 by Stephen L. Liebo), *quoted in Miller v. New Jersey Ins. Underwriting Ass'n,* 188 N.J.Super. 175, 457 A.2d 23, 31, *cert. denied,* 94 N.J. 508, 468 A.2d 169 (1983); *Caputo v. Blackstone Mut. Ins. Co.,* 323 F.Supp. 1252, 1257 (W.D.Pa.1971); *cited in Morgan v. American Sec. Ins. Co.,* 522 So.2d 454, 455 (Fla.Dist.Ct.App. 1988).

As Cigna sees it, many of the cases we have discussed turn on whether the insured had an insurable interest in the building at the time of the loss, rather then on whether the insured has actually suffered a pecuniary loss. To the contrary, pecuniary loss has been addressed in the cases we have cited. *Garcy, supra,* 496 F.2d at 484; *Aetna, supra,* 345 F.Supp. at 907–909; *Paterson–Leitch, supra,* 366 F.Supp. at 755–57; *Gendron v. Pawtucket Mutual Ins. Co., supra,* 384 A.2d at 697; *Wolf v. Home Ins. Co., supra,* 241 A.2d at 31.

In sum, as demolition remained contingent at the time of the loss, Verzi is entitled to recover from Cigna.

## IV.

Cigna also maintains that, because demolition was likely, Verzi is not entitled to recover $100,000.

The policy mandates use of either the "replacement cost" or the "actual cash value" of the building in determining the loss, and the parties stipulated that replacement of the building would exceed the limits of the policy. Moreover, there was no evidence of its actual cash value being less.

Cir.1970); *Leggio v. Millers Nat'l Ins. Co.,* 398 S.W.2d 607 (Tex.Civ.App. 1965).

■ As we have observed, the facts to be considered in evaluating an insured's pecuniary loss are those in existence at the time of the loss. According to Verzi, High's had considered abandoning the agreement upon learning that Cigna had rejected Verzi's claim.[5] We believe this illuminates the rationale of requiring an insurer promptly to satisfy a claim. Under such circumstances, Cigna may not reject Verzi's claim because the building may subsequently be demolished.

■ The policy was in effect at the time of the loss, Verzi retained an insurable interest, and the building's value was not affected by its possibly being demolished. Permitting "speculative, collateral questions, including the intended destruction, to enter into the ascertainment of actual value ... would multiply litigation and unnecessarily complicate insurance adjustments." *Board of Education v. Hartford Fire Ins. Co.,* 124 W.Va. 163, 19 S.E.2d 448, 450 (1942), quoted in *Paterson–Leitch, supra,* 366 F.Supp. at 756.

Hence, Verzi was entitled to $100,000.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**5.** In order to obtain the necessary permits, High's was required to have more acreage than that it had agreed to acquire from Verzi. High's demanded that the additional acreage be included at no additional cost, because High's was apparently aware that, in order to rebuild, Cigna would have to cover the loss. Its refusal to do so would no doubt make it more difficult for Verzi to dispose of the property.