MONUMENTAL PAVING &
EXCAVATING, INC.,
Plaintiff,

v.

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE
COMPANY, Defendant.

Civil No. AMD 96–1722.

United States District Court,
D. Maryland.

Nov. 27, 1996.

James D. Mathias, Glen Keith Allen, Piper & Marbury, Baltimore, MD, for Plaintiff.

Geoffrey S. Gavett, Rockville, MD, for Defendant.

MEMORANDUM

DAVIS, District Judge.

This case arises from an insurance coverage dispute between plaintiff, Monumental Paving & Excavating, Inc. ("Monumental"), and defendant, Pennsylvania Manufacturers' Association Insurance Company ("PMA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending before the Court are the plaintiff's motion for partial summary judgment and the defendant's cross-motion for summary judgment.[1] As the parties have fully briefed the issues presented, no hearing is deemed necessary. Local Rule 105.6 (D.Md.1995). For the reasons set forth below, I shall grant the defendant's motion for summary judgment and shall deny the plaintiff's motion for partial summary judgment.

(i)

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). See *O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Shealy,* 929 F.2d at 1012. Furthermore, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party. See *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356–57; *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

When, as in the instant case, both parties file motions for summary judgment, the court applies the same standard of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp., Com. Div.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Rather, the role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Management Corp. v. Hartford Acc. and*

---

**1.** Monumental seeks summary judgment on the issue of liability as to both counts of its com-

plaint, leaving only the issue of damages for later factual determination.

*Idem. Co.*, 627 F.Supp. 170, 172 (D.Md.1985) (quoting Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2720).

(ii)

The material facts in this case are undisputed. On December 9, 1995, a fire destroyed Monumental's maintenance shop building located at 1805–1815 Edison Highway in Baltimore, Maryland. The fire also damaged or destroyed equipment and other business personal property located in the building at the time. Among the items of property destroyed in the fire were two "Patch Masters," which Monumental used in its contracting business to repair potholes and other defects in asphalt paving.

At the time of the fire, Monumental had a commercial insurance package policy with PMA. This policy consisted of four "Coverage Parts": (1) Commercial Property Coverage; (2) Commercial General Liability Coverage; (3) Commercial Crime Coverage; and (4) Commercial Inland Marine Coverage. The Commercial Property Coverage portion of the policy provided Monumental blanket building and business personal property coverage in the amount of $686,000 at replacement cost.[2] This portion of the policy also provided coverage for lost business income in the amount of $50,000. The Commercial Inland Marine portion of the policy provided coverage for Monumental's schedule of "Contractor's Equipment" at specified dollar amounts. The two Patch Masters were listed on the schedule as equipment covered in the amount of $37,500 each, for a total of $75,000. The loss valuation method Monumental selected for the Patch Masters, as well as the other Contractor's Equipment, was actual cash value, rather than replacement cost.[3]

Shortly after the fire occurred, Monumental informed PMA of the property losses it had sustained. Monumental and PMA thereafter settled a significant portion of the claims resulting from the fire. Two portions of Monumental's insurance claim, however, remain disputed. First, Monumental claims that it is entitled to reimbursement from PMA for the full replacement value of the Patch Masters in accordance with the building and business personal property portion of the policy. PMA, however, has refused to pay for the replacement value of the Patch Masters—which Monumental estimates may total $425,000 or more—agreeing to pay only the $75,000 listed for the Patch Masters under the Inland Marine Contractor's Equipment Schedule. Second, Monumental claims that it is entitled to $50,000 in coverage for the loss of business income and extra expenses it sustained as a result of the destruction of the Patch Masters and other property. PMA has refused to pay this claim on the ground that there is no loss of business income coverage for the particular building destroyed in the fire.

Monumental thus instituted the present action in which both parties agree Maryland law controls. In a two-count complaint, Monumental alleges that PMA breached its obligations under the insurance contract by refusing to pay the replacement cost of the Patch Masters. Monumental further alleges that PMA has breached its obligations under the insurance contract by refusing to provide coverage for its loss of business income.

(iii)

The gravamen of Monumental's motion for summary judgment as to count I of its complaint is that the Patch Masters clearly are covered for their replacement value under the policy inasmuch as they meet the definition of "covered property." Accordingly, Monumental relies on that portion of the policy which defines "covered property" *inter alia* as

Business Personal Property located in or on the building described in the Declara-

---

**2.** The PMA policy defines "replacement cost" as the cost to repair or replace property with similar property without deduction for depreciation. *See* Pl's Mem. in Supp. of Mot. for Part. Summ. J., Ex. 2 at 22.

**3.** A loss valuation method, or loss valuation clause, "sets forth rules for establishing the value of insured property at the time of loss." Bernard L. Webb, et al., *Commercial Insurance* 27 (1988). "Actual cash value" is normally defined as "the cost to replace the property with new property of like kind and quality less physical depreciation." *Id.* at 27–28. *See also* Pl's Mem. in Supp. of Mot. for Part. Summ. J., Ex. 2 at 22.

tions ... consisting of the following unless otherwise specified ...: (2) Machinery and equipment; ... (4) All other personal property owned by you and used in your business.

Pl's Mem. in Supp. of Mot. for Part. Summ. J., Ex. 2 at 14.[4]

Monumental also claims that PMA's stance regarding policy coverage for the Patch Masters "has been expressly rejected as erroneous by Michael J. Klein of the Earl A. Klein Agency, Inc., the insurance agency that, on behalf of PMA, negotiated, sold, and delivered the PMA policy provided to Monumental Paving." Pl's Mem. in Supp. of Mot. for Part. Summ. J. at 5. In short, Monumental claims that it purchased $686,000 worth of blanket building and business personal property insurance and PMA is therefore obligated to indemnify it for its losses up to that limit.

PMA, on the other hand, argues that there is no replacement cost coverage for the Patch Masters. Specifically, PMA contends that while Monumental could have applied for and received replacement cost coverage for the Patch Masters under the Inland Marine portion of the policy, the application for insurance reflects no such request for the Patch Masters or any other of the scheduled equipment. PMA also notes that Monumental has

never alleged that it ever requested replacement cost coverage for the Patch Masters under the Inland Marine portion of the policy. PMA thus contends that Monumental has turned to the building and business personal property portion of the policy in a desperate attempt to obtain replacement cost coverage to compensate it for its losses.

Essentially then, PMA maintains that Monumental has no reasonable basis on which to claim that it expected replacement cost coverage for the Patch Masters. Indeed, in PMA's view, it is inherently inconsistent to apply for and pay for actual cash value reimbursement for the Patch Masters under one portion of the policy while claiming replacement cost under another portion. Moreover, PMA points out that Monumental's lack of expectation of replacement cost coverage for the Patch Masters under the building and business personal property portion of the policy is further demonstrated by its failure to report their replacement value on its insurance application as it was required to do.[5]

■ Because Monumental specifically scheduled the Patch Masters under the Inland Marine portion of the policy for their actual cash value and because it did not report the replacement value of the Patch

---

4. In its motion, Monumental also devotes substantial attention to its claim that Patch Masters are "equipment" and thus meet the definition of business personal property. Conversely, PMA claims that the Patch Masters are "vehicles or self-propelled machines" and thereby excluded from coverage under the policy. Inasmuch as I find the dispositive issue as to this count to be whether there is sufficient evidence from which a trier of fact could conclude that Monumental intended to have replacement cost coverage on the Patch Masters, I need not address this issue. Accordingly, for purposes of this motion, I shall assume, without deciding, that the Patch Masters are equipment.

5. The Declarations form for the building and business personal property coverage contains an itemized "Statement of Values" which reflects Monumental's representation of values on its application. The Statement of Values provides as follows:

Prem. 1, Bldg. 1
Building                                $434,444
Business Personal Property   $100,000

Prem. 1, Bldg. 2
Building                                $ 83,333
Business Personal Property   $ 16,667
Prem. 1, Bldg. 3
Building                                $100,000
Business Personal Property   $ [none]
Prem. 1, Bldg. 4
Building                                $ 27,778
Business Personal Property   $ [none]
                                           $762,222

Df's Mem. in Supp. of Cross Mot. for Summ. J. at 5–6.

The $686,000 blanket building and business personal property coverage limit Monumental carried represented 90% of the total of all stated values for the buildings and contents (i.e., 90% of $762,222).

PMA also argues that Monumental should be estopped from asserting a claim for the replacement value of the Patch Masters under the building and business personal property portion of the policy because it omitted this information from its application. Given the Court's focus on the threshold issue of Monumental's intent at the time of contracting, however, I need not address this issue.

Masters in the building and business personal property Statement of Values, PMA contends that the Patch Masters fall within the ambit of "Exclusion k" of the building and business personal property section. Exclusion k provides that covered property does not include:

> Property that is covered under another coverage form of this or any other policy *in which it is more specifically described, except for the excess of the amount due* (whether you can collect on it or not) from that other insurance.

Pl's Mem. in Supp. of Mot. For Part. Summ. J., Ex. 2 at 15 (emphasis added).

### (iv)

After a thorough examination of the summary judgment record in this case, this Court finds, as to count I of the complaint, Monumental's position to be without merit. Monumental has failed to establish the existence of a genuine dispute of material fact relative to its expectation of replacement cost coverage for the Patch Masters at the time it purchased the PMA policy. It is well established under Maryland law that the "'primary purpose' in construing insurance contracts, like all contracts, is to ascertain and give effect to the intentions of the parties at the time of contracting." *Catalina Enterprises, Inc. Pension Trust v. Hartford Fire Ins. Co.,* 67 F.3d 63, 65 (4th Cir.1995) (applying Maryland law), *cert. denied,* —— U.S. ——, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996). Moreover, "[t]o ascertain the parties' intent, the court must 'construe the instrument as a whole.'" *Id.* (quoting *Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 5, 607 A.2d 537, 539 (1992)). In addition, in Maryland, there is no rule that insurance policies are to be construed most strongly against the insurer. *Id.; see also Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995); *Bausch & Lomb Inc. v. Utica Mutual Ins. Co.,* 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993).

What is most troubling about Monumental's claim for replacement cost coverage is its failure to offer *any evidence* as to why it applied for and specifically scheduled the Patch Masters for their actual cash value under the Inland Marine portion of the policy if it in fact expected replacement cost coverage under the building and business personal property portion. As PMA points out, actual cash value and replacement value are two completely separate and distinct loss valuation methods. *See, e.g., Whitmer v. Graphic Arts Mutual Ins. Co.,* 928 F.2d 123, 124 (4th Cir.1991) ("Whether the measure of damage is the actual cash value or replacement cost is the sole question in the case."); *Brand Distributors, Inc. v. Insurance Co. of N. Am.,* 532 F.2d 352, 359 (4th Cir.1976) ("[W]hen it is considered that a policy of insurance is a contract of indemnity, and that replacement cost, or actual cash value, is the standard for coverage...."); *Cigna Property & Cas. Ins. Co. v. Verzi,* 112 Md.App. 137, 146, 684 A.2d 486, 490 (1996) ("The policy mandates use of either the 'replacement cost' or the 'actual cash value' of the building in determining the loss.") Moreover, as PMA also points out, if Monumental desired replacement cost coverage it could have easily requested and obtained the coverage under the Inland Marine portion of the policy, without ever resorting to the building and business personal property coverage.

As to Monumental's claim for replacement cost coverage under the building and business personal property portion of the policy, it is significant that Monumental represented, at the time it applied for the insurance, that it had $90,000 worth of business personal property in what the policy denominated as Building 1 and $15,000 worth of personal property in Building 2—the building in which the fire occurred.[6] Yet, Monumental now claims that the replacement cost for the Patch Masters alone will total *at least* $425,000. While it is true, as Monumental notes, that the blanket limit of building and busi-

---

**6.** PMA increased these limits to $100,000 and $16,667 respectively in accordance with the "Agreed Value" coverage Monumental selected. "Agreed Value" coverage "is provided with the understanding that the insured has fairly represented the value of its business personal property

and is therefore not responsible for any coinsurance." Df's Mem. in Supp. of Cross Mot. for Summ. J. at 6; *see also* Pl's Mem. in Supp. of Mot. for Part. Summ. J., Ex. 2 at 23; Webb, et al., *supra* at 31.

ness personal property coverage Monumental had available to it was $686,000, it is equally true that this limit was directly derived from Statement of Values it submitted to PMA and so is indicative of the parties' intentions at the time of contracting.

Upon review of the PMA policy as a whole, it is clear that Monumental's representation of values relative to the building and business personal property portion of the policy coupled with the manner in which it chose to insure the Patch Masters under the Inland Marine portion of the policy evidence a lack of intent to obtain replacement cost coverage for the Patch Masters. More importantly, Monumental has failed to present any evidence on the basis of which a reasonable trier of fact could conclude otherwise. Indeed, it has presented little more than "mere speculation" or the "building of . . . inference[s]" to establish a factual issue for the jury. Such a showing, however, provides an insufficient basis on which to survive summary judgment. *Beale,* 769 F.2d at 214; *see O'Connor,* 56 F.3d at 545; *see also Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 ("mere existence of a scintilla of evidence" is insufficient for nonmovant to withstand a motion for summary judgment). As such, Monumental's general allegation that the agent who sold it the policy has "expressly rejected" PMA's position regarding coverage for the Patch Masters lacks the specificity required to survive summary judgment. *See, e.g.,* Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; Wright, Miller, Kane, *supra,* Civil 2d § 2727 ("[The non-movant] . . . is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.").

Accordingly, I conclude that Monumental's breach of contract claim as alleged in count I of the complaint fails as a matter of law. The overwhelming evidence in this case reflects that the Patch Masters were specifically described and fully covered under the Inland Marine portion of the policy and thus excluded from coverage under the building and business personal property portion of the policy pursuant to Exclusion k.

**(v)**

■ In count II of the complaint, Monumental claims that it is entitled to $50,000 loss of business income coverage as a result of the fire in Building 2. That is, it relies on the portion of the Business Income Coverage Form that states that

[PMA] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or *damage to property at the premises described in the Declarations . . . .*

Pl's Mot. for Part. Summ. J., Ex. 2 at 24. (emphasis added). Thus, Monumental claims that because the fire occurred on its "premises," namely 1805–1815 Edison Highway, PMA must therefore indemnify it for its business income losses, up to the $50,000 policy limit.

Conversely, PMA claims that there is no loss of business income coverage for Building 2. In this regard, it points to a provision of the Business Income Coverage Form, which immediately precedes the provision Monumental relies on, and which states that "[c]overage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations[.]" *Id.* PMA also points to the Declarations page itself which states that "[i]nsurance at the described premises applies only for coverages for which a limit of insurance is shown." *Id.* at 12. Accordingly, PMA notes that the Declarations page reflects a $50,000 limit of insurance for loss of business income, including extra expense, only for "Premises 1, Building 1."

PMA further claims that, in addition to the lack of coverage for Building 2 as evidenced by the policy Declarations page, Monumental's insurance application reflects no such request for loss of business income coverage. Moreover, PMA argues that Monumental's expansive definition of the term "premises" is misplaced. PMA maintains that this policy term simply means that, to be covered, a loss must occur on the insured premises, as opposed to elsewhere.

502

With respect to count II of the complaint, Monumental has failed to demonstrate the existence of a genuine dispute of material fact relative to its reasonable expectation of loss of business income coverage for Building 2. A cursory inspection of the Declarations page and the application readily reveals that the coverage in question was applied for and obtained only as to Building 1, Premises 1. In fact, as PMA observes, Monumental has never even alleged that it applied for loss of business income coverage as to Building 2.

Furthermore, Monumental's reliance on an expansive definition of the term "premises" to demonstrate the existence of loss of business income coverage is, at the very least, unavailing. To accept Monumental's argument that simply because the fire occurred on its premises it is covered, while ignoring the clear indications of the application and the Declarations page, is to ask this Court to indulge in a "strained or unreasonable construction of policy language." *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 721, 475 A.2d 454, 460 (1984); *see also Catalina*, 67 F.3d at 66. I decline Monumental's invitation so to interpret the policy because it is an irrational interpretation, and I am compelled to the view, as well, that no rational juror would accept the invitation. Accordingly, I conclude that Monumental's breach of contract claim as alleged in count II of the complaint fails as a matter of law.

(vi)

For the reasons set forth above, Monumental's motion for partial summary judgment shall be denied in its entirety; PMA's cross motion for summary judgment shall be granted. A separate order shall be issued herewith.